358 S.E.2d 222

David E. THOMAS

v.

RALEIGH GENERAL HOSPITAL, a corporation, and Dr. Joseph J. Carozza and Dr. Elias H. Isaac.

No. 17495.

Supreme Court of Appeals of West Virginia.

May 27, 1987.

Timothy R. Ruckman, Callaghan & Ruckman, Summersville, for appellant.

William H. File, Jr., Beckley, for Raleigh Gen. Hosp.

Edgar A. Poe, Jr., Shuman, Annand & Poe, Charleston, for Dr. Elias Isaac.

BROTHERTON, Justice:

This is an appeal by David E. Thomas from two summary judgments of the Circuit Court of Raleigh County. Thomas filed an action against Raleigh General Hospital, Dr. Joseph J. Carozza, and Dr. Elias H. Isaac for medical malpractice. The allegations by Thomas alleged active negligence only by Dr. Carozza, but none by Raleigh General Hospital or Dr. Isaac. Instead, Thomas relied on theories of vicarious liability for these defendants. Nevertheless, the trial court found no vicarious liability and dismissed the two defendants, from which ruling Thomas appeals.

David Thomas arrived at the emergency room of Raleigh General Hospital at 10:06 p.m. on December 18, 1981, for a strain on his right side. The next day he was examined by Dr. Isaac. Thomas told Isaac that he had been operated on four times for an incisional hernia with a mesh repair. The patient was then admitted to the hospital for possible repair of another hernia.

On December 30, 1981, Dr. Isaac performed an exploration of the incisional area called a mini-laparotomy. The anesthesia was given under the direction and control of Dr. Joseph Carozza, a board certified anesthesiologist, and a certified registered nurse-anesthetist, Larry Rupe.

The exploration revealed no evidence of a hernia and revealed that the previous hernia repair was strong. All findings of the surgery were good, and Thomas appeared to tolerate the procedures well with no complications.

The anesthesia given was a general anesthesia with the use of an endotracheal tube. Dr. Carozza supervised the procedure, with Nurse Rupe actually giving the anesthesia.

The patient was released on January 2, 1982, with no apparent complications. However, on a follow-up visit to Dr. Isaac's office on January 6, 1982, Thomas complained of being hoarse. His voice was weak and breathy. For this condition Thomas went to see Dr. Romeo Lim in Charleston. According to a May 13, 1982, letter by Lim, Thomas' voice was restored to near normal following steroid injections.

This law suit was filed in the Circuit Court of Raleigh County against Raleigh General Hospital and Dr. Joseph Carozza. The complaint was later amended to add Dr. Elias Isaac as a defendant. Motions were made to dismiss the hospital and Dr. Isaac. In ruling on these motions, the trial court noted that there was no claim that the injury occurred directly from Dr. Isaac's surgery, but that the injury allegedly occurred when an endotracheal tube was inserted or removed by the nurse-anesthetist. The insertion and removal of the tube was done under the direction of Dr. Carozza and his employee, Larry Rupe. Since the allegations against Isaac and the hospital alleged no active negligence, and

the court decided that there was no vicarious liability, the court dismissed the hospital and Isaac. From this ruling Thomas appeals.

## I.

■ We agree with the trial court in dismissing Dr. Isaac. The only allegations against Dr. Isaac were based on theories of vicarious liability. Thomas was not claiming that Isaac injured him through an act of negligence which Isaac committed, but rather that Isaac's supposed agents, whom he was supervising and controlling, injured Thomas. The theory alleged by Thomas would support a finding of vicarious liability against Isaac if proved. Where a defendant has control over the negligent actor, he may be vicariously liable for that actor's negligence. *See generally*, 5 F. Harper, F. James and O. Gray, *The Law of Torts*, § 26.1 (2d ed. 1986). Nevertheless, depositions and interrogatories were taken of all the principal actors in the case, including the anesthetist, Larry Rupe, the anesthesiologist, Dr. Carozza, the surgeon, Dr. Isaac, and the assistant surgeon, Dr. Patel. All of the deposition testimony made it clear that Dr. Isaac had nothing to do with the anesthesia procedure. Most of the witnesses were unsure whether or not Isaac was even in the room when the tube was inserted, but all were quite clear that he exercised no control whatsoever over Carozza or Rupe.

■ Thus, Dr. Isaac, in support of his motion for summary judgment, has pointed to evidence in the record which proves that he had no control over the anesthesia procedure. This evidence rebuts Thomas' allegation that Isaac had some control over Carozza and Rupe. In order to resist this motion for summary judgment, Thomas must then have presented to the trial court evidence showing that these facts were in dispute. We noted in syllabus point 2 of *Guthrie v. Northwestern Mut. Life Ins. Co.*, 158 W.Va. 1, 208 S.E.2d 60 (1974), that "[u]nder the provisions of Rule 56 of the West Virginia Rules of Civil Procedure,

when the moving party presents depositions, interrogatories, affidavits or otherwise indicates that there is no genuine issue as to any material fact, the resisting party to avoid summary judgment must present some evidence that the facts are in dispute." *See also* syllabus point 5, *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 346 S.E.2d 788 (1986). In the present case Thomas presented no evidence to dispute the finding that Dr. Isaac had no control over the anesthesia procedure, and therefore the trial court's ruling on this matter was correct.

Thomas also argues the "captain of the ship" doctrine set out in *McConnell v. Williams*, 361 Pa. 355, 362, 65 A.2d 243, 246 (1949). Under this doctrine, a surgeon is likened to the captain of a ship, in that it is his duty to control everything going on in the operating room. Thus, liability is imposed by virtue of the surgeon's status and without any showing of actual control by the surgeon. We have not yet touched on this issue in West Virginia. *See* Farrell, *The Law of Medical Malpractice in West Virginia*, 82 W.Va.L.Rev. 251, 278 (1979).

In looking to the history of this doctrine, Pennsylvania originally adopted the captain of the ship doctrine to get around charitable immunity for hospitals:

> ... [I]f operating surgeons were not to be held liable for the negligent performance of the duties of those working under them, the law would fail in large measure to afford a means of redress for preventable injury sustained during the course of such operations.

361 Pa. at 364, 65 A.2d at 247. Most states have now abolished the hospital charitable immunity doctrine, as did West Virginia in syllabus point 1 of *Adkins v. St. Francis Hosp.*, 149 W.Va. 705, 143 S.E.2d 154 (1965). The need for the doctrine gone, the majority of states which are now considering the captain of the ship doctrine are rejecting it. *See, e.g., May v. Broun*, 261 Or. 28, 37–38, 492 P.2d 776, 780–781 (1972); *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 584 (Tex.1977).[1]

---

**1.** The court in *Sparger* noted that the "captain of the ship" doctrine had spread further than its

drafters intended:

■ We reject the captain of the ship doctrine. The trend toward specialization in medicine has created situations where surgeons do not always have the right to control all personnel within the operating room. *See Thompson v. Lillehei*, 164 F.Supp. 716, 721 (D.Minn.1958), *aff'd.*, 273 F.2d 376 (8th cir.1959). An assignment of liability based on a theory of actual control more realistically reflects the actual relationship which exists in a modern operating room. *See May v. Broun*, 261 Or. 28, 37–38, 492 P.2d 776, 781 (1972); *see also Bria v. St. Joseph's Hosp.*, 153 Conn. 626, 629–630, 220 A.2d 29, 31 (1966).[2]

## II.

The question before the Court concerning the dismissal of Raleigh General Hospital is whether Carozza was an independent contractor or an agent of the hospital. If he is found to be an independent contractor, then the hospital is not liable for his negligence. *See, e.g., Cross v. Trapp*, 170 W.Va. 459, 294 S.E.2d 446, 459 (1982); *see generally*, Annotation, *Liability of Hospital or Sanitorium for Negligence of Physician or Surgeon*, 51 A.L.R.4th 235, § 5 (1987). If, however, he is found to be an agent of the hospital, then the hospital may be vicariously liable for his negligence. *See, e.g., Jenkins v. Charleston General Hosp. & Training School*, 90 W.Va. 230, 235, 110 S.E. 560, 562 (1922); *Cross v. Trapp*, 170 W.Va. 459, 294 S.E.2d 446, 459 (1982) (implied); *see generally*, Annotation, 51 A.L.R.4th 235, § 3 (1987).

While there was no evidence which would support a holding of vicarious liability as to Dr. Isaac, this cannot be said of Raleigh General Hospital.

■ Dr. Carozza held the positions of Director of Respiratory Services and Chief of Anesthesiology at the hospital. The hospital gave him an office and a stipend for these duties. There is a factual question as to whether these duties and compensation would create a relationship where Dr. Carozza was the "manager" of anesthesiology at the hospital. A hospital cannot absolve itself from liability of a treating physician where that physician was a "manager" of the hospital. *See Vaughan v. Memorial Hosp.*, 100 W.Va. 290, 293, 130 S.E. 481, 482 *later app.*, 103 W.Va. 156, 136 S.E. 837 (1925). Further, Dr. Carozza and his associate were the only anesthesiologists used by the hospital. A patient had no choice in choosing an anesthesiologist. This was assigned to him by the hospital. Where a patient goes to a hospital seeking medical services and is forced to rely on the hospital's choice of physician to render those services, the hospital may be found vicariously liable for the physician's negligence. *See, e.g., Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255, 256–258 (Ky.1985). *See also* Annotation, 51 A.L.R.4th 235, § 13(a) (1987).

■ "A motion for summary judgment may only be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Syllabus point 2, *Mandolidis v. Elkins Indus., Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978). Because there are material facts at issue in the dismissal of Raleigh General Hospital, we find that the grant of summary judgment

---

Similes sometimes help to explain a factual situation, but in legal writing, phrases have a way of being canonized and of growing until they can stand and walk independently of the usual general rules. Mr. Justice Frankfurter once wrote concerning such phrase-making in judicial opinions: "The phrase ... is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas." *Tiller v. At-*

*lantic Coast Line R. Co.*, 318 U.S. 54, 68, 63 S.Ct. 444, 452, 87 L.Ed. 610 (1942). The result in the use of the captain of the ship is that a surgeon or physician may be held liable, not as others upon the basis of the general rule of borrowed servant, but as captain of the ship. 547 S.W.2d at 584.

**2.** Even Pennsylvania has suggested that the captain of the ship doctrine may no longer be a viable theory of vicarious liability under Pennsylvania law. *See Grubb v. Albert Einstein Medical Center*, 255 Pa.Super. 381, 402, 387 A.2d 480, 491 (1978).

by the trial court was improper and therefore reverse on this issue.

For the reasons set forth above, the dismissal of Dr. Isaac is affirmed, and the dismissal of Raleigh General Hospital is reversed and the case is remanded.

Affirmed in part, reversed in part, and remanded.