USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-1861 KAREN SUAREZ MATOS, ET AL., Plaintiffs, Appellees, v. ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL, INC., ET AL., Defendants, Appellees, ____________________ CORPORACION INSULAR DE SEGUROS, INC., Defendant, Appellant. ____________________ No. 92-1862 KAREN SUAREZ MATOS, ET AL., Plaintiffs, Appellees, v. ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL, INC., Defendant, Appellant. ____________________ No. 92-1891 KAREN SUAREZ MATOS, ET AL., Plaintiffs, Appellants, v. ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL, INC., ET AL., Defendants, Appellees. ____________________ No. 92-1914 KAREN SUAREZ MATOS, ET AL., Plaintiffs, Appellees, v. ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL, INC., ET AL., Defendants, Appellees, ____________________ DR. JOSE I. CARRASCO, Defendant, Appellant. ____________________ No. 92-2469 KAREN SUAREZ MATOS, ET AL., Plaintiffs, Appellees, v. ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL, INC., ET AL., Defendants, Appellees, ____________________ CORPORACION INSULAR DE SEGUROS, INC., Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Igor J. Dominguez with whom Igor J. Dominguez Law Offices was on _________________ ______________________________ briefs for Ashford Presbyterian Community Hospital, Inc. Rafael Fuster-Martinez with whom Carlos Martinez-Texidor, ________________________ _________________________ Martinez-Texidor & Fuster and Igor Dominguez were on briefs for __________________________ _______________ Ashford Presbyterian Community Hospital, Inc. Efren T. Irizarry-Colon with whom Elisa M. Figueroa-Baez __________________________ _________________________ Irizarry-Colon and Soler & Banuchi Law Offices were on briefs for Dr. ______________ ____________________________ Jose I. Carrasco. Eugene F. Hestres with whom Bird, Bird & Hestres was on briefs __________________ _____________________ for Corporacion Insular De Seguros. Charles A. Cordero with whom Cordero, Miranda & Pinto was on ___________________ __________________________ briefs for Karen Suarez Matos, et al. ____________________ REVISED OPINION REVISED OPINION ____________________ September 13, 1993 ____________________ ALDRICH, Senior Circuit Judge. Plaintiff Karen _____________________ Suarez Matos, a resident of New York vacationing in Puerto Rico, was taken to defendant Ashford Presbyterian Community Hospital in San Juan on October 30, 1989 on an emergency basis. A uterine tumor, or myoma, was removed the following day, and thereafter examined by defendant Doctor Jose Carrasco, a pathologist on the staff of the hospital. He, allegedly, reported it was benign. On discharge with that diagnosis plaintiff was advised to follow up with a New York doctor, two names being given. Beyond a clinic visit, this she failed to do, but after five months she again felt pain and was found, too late, cancerous beyond cure. It was concluded that her tumor had been an unusual type, and malignant or in danger of becoming so, calling for careful watching. Concededly she had not been so advised. A district court jury found Doctor Carrasco guilty of malpractice, and that the hospital was chargeable for his conduct. It awarded $1,325,000 against both, which included $650,000 for future medicals and care, with an additional $250,000 in favor of plaintiff Carmen Matos, Karen's mother.1 By prior stipulation it followed that defendant Corporacion Insular de Seguros, Inc. (CIS), defendants' ____________________ 1. The term plaintiff hereafter, if used in the singular, shall be taken to refer to Karen. -4- insurer, was liable.2 The court refused to recognize the policy limits of $250,000 per incident and entered judgments against CIS for the full amounts. Appeals followed. The appeals raise a number of matters: whether the evidence warranted the finding of malpractice against Doctor Carrasco; whether his conduct was chargeable to the hospital; whether the court erred in disregarding the policy limits; and evidentiary questions of damages. In addition, there is a question whether there should be a new trial because of improper argument. Our overall conclusion is that while there was evidence warranting findings against defendants, a new trial is called for. The initial question is whether a finding of negligence was warranted against Doctor Carrasco. The evidence here is singular. With their early witnesses plaintiffs made a good showing that the tumor was unusual -- one in 500 -- and that if it had been recognized as unusual a further study should have been made to inquire as to possible malignancy. However, they made a doubtful showing whether a mistake in failing to recognize would amount to malpractice. Second, plaintiffs' doctors agreed that Doctor Carrasco's report to the surgeon denied malignancy, their testimony ____________________ 2. The amended complaint had originally named two other hospital doctors, Dr. Jose Juncosa and Dr. Angel Lopez Ruiz and their separate insurer, but plaintiffs voluntarily dismissed against them before pretrial. -5- revolving around the words used in the report. The report described the tumor as a leiomyoma-leiomyoblastoma. A Doctor Lazarevic, a pathologist called by plaintiffs, testified that the second word meant benign, and that if there were malignant cells this word should have been leiomyosarcoma. Doctor Lopez, the admitting physician, testified that he looked up the term leiomyoblastoma in a medical dictionary and found it meant "usually benign." However, he testified that Doctor Carrasco told him that blastoma meant non- cancerous. Doctor Juncosa, the operating physician, though without referring to a dictionary, confirmed Doctor Lazarevic. He testified, without objection, that Doctor Lopez had told him that Doctor Carrasco had told him, Doctor Lopez, that the tumor was benign. In this circumstance one might have expected Doctor Carrasco to testify that he had made an honest mistake in his diagnosis, and had, accordingly, not pursued the matter. Instead, after testifying that he was expecting a "routine leiomyoma" he stated, "Upon looking at it I noticed immediately, this is not a routine leiomyoma, not the typical leiomyoma, benign lesion. . . . Leiomyoblastoma is a tumor that nobody knows exactly what it is going to do. Many of them become outright malignant within three months. . . . Leiomyoblastoma, which now should be called stromal tumor of uncertain malignant potential -- which is my diagnosis -- this tumor should be considered, by anyone who knows anything -6- about medicine -- not by dictionaries, but anyone who is up to date, who has gone to all the latest meetings -- as a tumor of definite malignant potential. . . . Leiomyoblastoma is the name. If you know pathology you know the name. If you are a surgeon and you don't know that name, you better stop acting as a surgeon." In addition to the warning that Doctor Carrasco testified was thus apparent on the face of the report, he stated he had told Doctor Juncosa the above and had shown him a book confirming it. From the jury's standpoint the case was complicated by a Doctor Killackey, from New York, who, though admittedly not a pathologist, testified that Doctor Carrasco's procedures deviated from the standards of medicine because his diagnosis was "completely incorrect," which, of course, is not the test, and that Doctor Carrasco "doesn't really know what it [leiomyoblastoma] is." She added that the dictionary meaning was not important.3 Without reviewing further, it is enough to say, though difficult, that the jury could combine Doctor Carrasco's admission that he knew of the possibility of malignancy and Doctor Juncosa's statement that Doctor Carrasco told him the reverse, and thus prevent an ordered judgment for defendants. In other words, the jury could find ____________________ 3. Plaintiffs' counsel described Doctor Killackey to the jury as "courageous." He meant it as a compliment. -7- that Doctor Carrasco admittedly knew that the tumor was dangerous but did not adequately convey this to the operating doctor so that the vital warning never reached the plaintiff. In this contest of credibility defendants were hurt by two improprieties. The first was the court's allowing plaintiffs after calling a Doctor Miranda, to cross-examine him as a hostile witness because defendants had named him, pretrial, as their proposed expert. This was error. Fed. R. Evid. 611 (c) reads as follows. (c) Leading questions. Leading (c) Leading questions. questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions. This is an enlargement of a prior rule, and necessarily involves some factual interpretation, but we divide it into two categories; a witness who is an adverse party or identified with one, or is affirmatively viewable as hostile because of the situation, viz., classifiable in advance as ___ hostile, Ellis v. City of Chicago, 667 F.2d 606, 612-13 (7th _____ _______________ Cir. 1981), and witnesses who demonstrate hostility during trial, United States v. Brown, 603 F.2d 1022, 1025-26 (1st ______________ _____ Cir. 1979). Doctor Miranda had no prior connection as part of the scene, Ellis, ante, or otherwise, Chonich v. Wayne _____ ____ _______ _____ Cty. Community College, 874 F.2d 359, 368 (6th Cir. 1989), _______________________ -8- as, for example, an employee, Perkins v. Volkswagen of _______ ______________ America, Inc., 596 F.2d 681, 682 (5th Cir. 1979), or a ______________ defendant's girlfriend, United States v. Hicks, 748 F.2d 854 _____________ _____ (4th Cir. 1984). We find no case involving the adversary's proposed expert, or suggesting that simply because a party expects favorable testimony from a witness, the opponent is entitled to call him, or her, as hostile. If a party proposes to call a happenstance witness to an accident, does that mean the other can call him and cross-examine? The obligation to name witnesses, about to be expanded, is intended to give opportunity to prepare, not to afford procedural advantages. We add that the court's rule would tend to make experts who are reluctant to appear in the first place even more reluctant if they are to start with rigorous cross-examination before they have even made their statement. Conceivably plaintiffs might have done as well by waiting and cross-examining Doctor Miranda after he had testified for defendants. In any event, defendants did not object to the court's allowing cross-examination and, while regarding the course followed as undesirable practice, we would not find it to be plain error affecting substantial rights where no one objected to it. However, our concern with this issue pales compared with plaintiffs' closing argument that the court, rather than correcting, cf. __ Gonzalez-Marin v. Equitable Life Assur. Soc., 845 F.2d 1140 ______________ __________________________ -9- (1st Cir. 1988), called permissible. To begin with, counsel violated the elementary rule that counsel should never state his opinion. Here it was particularly prejudicial as he condemned opposing counsel, and appealed directly to jurors' personal motives. Now, when I helped select you, I think on the other side there-- and again, this is my own opinion-- that I saw these other lawyers on the other side smiling, and I think I know why they were smiling. I think they were smiling because-- MR. FUSTER: Your Honor, we object. We don't think this is proper. THE COURT: Yes, what do you mean they were smiling? MR. CORDERO: I am going to that. Why? Because there are no ladies in the jury, and they cannot feel-- THE COURT: All right, I will allow the argument. Permissible argument. Go ahead. MR. CORDERO: Thank you, your Honor. When I selected you and I think I saw them smiling-- and I am just surmising. I may even be speculating, I may be arguing to you-- I am sure they were thinking, "Aha, not one woman on the jury, and men are not as sensitive to damages and suffering as women." Well, if that's what they were thinking, I think they were wrong. You know, my family comes from Isabela, all of them, my father, my grandfather, my great grandfather, but I happened to be born and raised in the barrio in New York, and if anybody thinks there was a macho, I think I was a macho. -10- Look at my fist. It was broken from fighting in the streets. My nose was broken in six places, and I had three broken ribs. I was a combat infantry officer in the army-- MR. FUSTER: Your Honor-- THE COURT: That's permissible. MR. CORDERO: And I thought I was a macho. I was a combat infantry officer in the army. And yet I can say here today that I feel I'm as macho as any man in this room, but I'm also a human being and I also have feeling and I know that all of you have feeling. Because we all have a mother, maybe we have a sister, maybe we have a daughter, and we don't want to see them suffering. And if they suffer, we suffer, and that's why I helped select you as a jury, because I know that you will understand what suffering is. Counsel added that not telling Karen that she had cancer, "that to me would amount to murder." He then offered his own evidence. After purporting to quote testimony, he added, "Your recollection is better, but I know what he said." "The mistake was that Doctor Carrasco put down 'leiomyoblastoma,' which the dictionaries and all the other doctors meant (sic) a benign tumor." This, of course, was incorrect; the evidence was that the dictionary defined 'leiomyoblastoma' as usually benign. _______ These highly objectionable arguments were then compounded in plaintiffs' rebuttal. They tell you "Don't decide this case with your heart." Well, I'm going -11- to say something else. You are the conscience of this community. I say, decide it with your heart, with your head, using the ordinary experience of life. That's how you decide a case. It is difficult enough for a jury to decide a case involving serious suffering dispassionately upon the law and the evidence without being told that the community conscience calls to decide with the heart. The total argument was outrageous. We can only think that this experienced court, in permitting it, had a bad day. It is true that only the hospital, and not Doctor Carrasco, objected, and there has been a suggestion that the latter could have no rights, absent plain error. See United ___ ______ States v. Saade, 652 F.2d 1126, 1136-37 (1st Cir. 1981). ______ _____ This suggestion we might be slow to follow if it led to one party receiving a new trial and another, equally placed, not, since a primary reason for an objection is to give the court notice. This it had. However, we need not reach this, as we would consider it plain error for a verdict to stand after a jury had been so traumatized. We suggest that the court also allowed emotional overplay when it permitted, as it noted, 45 minutes dwelling on plaintiffs' pain and suffering. Even more do we believe the argument may have affected the jury's finding as to future medicals and care -- an amount that -12- would seem unwarranted in any event -- but we need not make a final decision. The court's ruling as to pleading these damages was correct. Decisions on what needs to be pleaded by way of special damages,4 are sparse. The tendency is liberalization. Wright & Miller, Federal Practice and ______________________ Procedure, 1311 (1990). We believe the purpose is to give _________ notice; the more natural are the damages, the less pleading is needed. Compare Great American Ind. Co. v. Brown, 307 _______ ________________________ _____ F.2d 306 (5th Cir. 1962) (loss of earning capacity following personal injury) with Action Repair, Inc. v. American _____________________ ________ Broadcasting Co., 776 F.2d 143 (7th Cir. 1985) (business loss ________________ following defamation). We are satisfied with "Karen will incur in (sic) extensive major medical costs and expenses and will require costly health care services until her death." The subject had been opened; defendants could seek details by inquiry. For future purposes we make the following rulings. Ashford Hospital ________________ Ashford appeals because the court permitted a finding that it was charged with responsibility for Doctor Carrasco's negligence. If the pathologist was guilty of malpractice, it follows from Marquez Vega v. Martinez Rosado, ____________ _______________ ____________________ 4. "When items of special damage are claimed, they shall be specifically stated." Fed. R. Civ. P. 9(g). -13- 116 D.P.R. 487 (1985), that the hospital is liable also. While strictly, perhaps, that decision contained dictum that we might distinguish, and certainly we need not adopt plaintiffs contention that it would impose liability in the case of an independent contractor having no other relationship with the hospital, it is clear here that granting staff privileges coupled with a joint sharing in profits, left the hospital fully responsible. On the facts that cannot be avoided, under Puerto Rico law the hospital necessarily was vicariously liable for the doctor's negligence, if found and the jury finding, even if improperly influenced, was necessarily correct. As matter of law the hospital was a joint actor in a joint enterprise. Corporacion Insular de Seguros, Inc. (CIS) __________________________________________ The liability of CIS, the insurer, was a question of law for the court, not affected by plaintiffs' improper argument to the jury. Unfortunately, however, it decided wrongly. Pressed by CIS, on finding that judgments had issued against it in the full amounts of the verdicts in spite of the policy limits, the court denied motions without giving reasons. There is some question as to under which rule the motions should lie. The miscarriage of justice is such that we do not pause to pursue that aspect, but consider -14- the substance briefly, if only to make it clear that the court's incorrect decision is not law of the case.5 In plaintiffs' amended complaint it was alleged that the liability insurer is liable "up to its policy limits." In a joint answer filed on behalf of Ashford and CIS it was alleged that plaintiffs' claims against Ashford "exceed the coverage limits provided by" CIS to Ashford. The truth of this answer was known to plaintiffs as it is not disputed that the policies were produced pretrial. In the course of trial, the parties conferred with the court with respect to the charge and special questions, and the following ensued. MR. CORDERO (for plaintiffs): Your Honor, I would like the record to reflect that last night all of us agreed in chambers that if there is a judgment for or against the hospital, the Court will enter a similar judgment against the insurance company, Corporacion Insular de Seguros, in accordance with the terms and conditions of the policy. THE COURT: That was the agreement, I remember. MR. CORDERO: That was the agreement, your Honor. MR. FUSTER: But we didn't agree that judgment would be entered in that sense, but that is the way it should be. THE COURT: Well, yes, you did agree that a judgment be entered to the-- in ____________________ 5. The question of the insurer's failure to settle is not before us. -15- accordance with the terms and conditions of the policy. That's certain. Because otherwise it would be officious. You know, I agreed to something but missed nothing. We don't play games here. MR. FUSTER: What I mean, your Honor, is that I agree to it now. We didn't discuss it last night. THE COURT: No, we so much discussed it that if you remember we agreed whether we should say "to the limit of the policy," and all that, and then we reached the agreement to say that in accordance with the terms and conditions of the policy. So do we agree now that that is the agreement? MR. FUSTER: Sure, we agree. MR. CORDERO: That's the stipulation, Your Honor. (TT-A 1074-75). Unhappily the court's statement, "We don't play games here" proved to be a false prophesy. The first game before us is found in plaintiffs' brief. "Before the instructions were read by the trial judge to the jury all parties stipulated to the court that '. . . if there is a judgment for or against the hospital the court will enter a similar judgment against the insurance company, Corporacion Insular de Seguros.' (TT-A 1074)." When we check the cite we discover that the period appearing in their brief after "de Seguros" is plaintiffs'. In the transcript it is a comma, followed by the modification, "in accordance with the -16- terms and conditions of the policy." One does not have to look to the familiar principle that all words are presumed to have meaning to recognize that there is a difference between liable and liable in accordance with the terms and conditions of the policy. On reading the transcript further, quoted supra, we find that the phrase plaintiffs chose to omit in _____ the brief, cut off by their false period, was precisely intended as a paraphrase of "to the limit of the policy." We are astonished. There follow a number of other contentions. These not only do not answer the above, but they are equally unpersuasive in themselves. We give one example: CIS allegedly waived the policy limit by not listing it in the pre-trial memorandum under Contested Issues. It was not a contested issue. Plaintiffs admitted in the amended complaint that they were not claiming above any limit; defendant's answer asserted there was a limit; plaintiffs had seen the policies, and knew what it was. Now they say it was waived. These are the plaintiffs who charge that defendant CIS's attempt to assert the policy limits is "misleading double talk." The verdicts and judgments are vacated and the case remanded for further proceedings not inconsistent with this opinion. These should be held before a different judge. Rivera-Lopez v. Mun. of Dorado, 979 F.2d 885, 887 (1st Cir. ____________ _______________ -17- 1992). Any supersedeas bond is vacated, with costs to appellants in Nos. 92-1861; 92-1862; and 92-1914.6 In others, no costs. ____________________ 6. This obligation stands even if plaintiffs ultimately recover. Furthermore, if plaintiffs ultimately recover, they are to receive no costs in connection with the first trial. -18-