737 S.E.2d 270

Jan H. CUNNINGHAM and Lynn
Cunningham, Plaintiffs
Below, Petitioners

v.

HERBERT J. THOMAS MEMORIAL
HOSPITAL ASSOCIATION, Defen-
dant Below, Respondent.

No. 11–0398.

Supreme Court of Appeals of
West Virginia.

Submitted May 23, 2012.

Decided Nov. 20, 2012.

Marvin W. Masters, The Masters Law Firm LC, Charleston, WV, for Petitioners.

Thomas J. Hurney, Jr., Rob J. Aliff, Jennifer M. Mankins, Jackson Kelly PLLC, Charleston, WV, for Respondent.

PER CURIAM:

In this appeal from an order granting summary judgment in favor of Herbert J. Thomas Memorial Hospital Association (hereinafter referred to as "Thomas Hospital" or "the hospital"), a defendant in the action below, the petitioners, Jan H. Cunningham and Lynn Cunningham (hereinafter collectively referred to as "the Cunninghams"), who are the plaintiffs below, ask this Court to find that certain physicians were. employees or actual agents of Thomas Hospital, and therefore, Thomas Hospital may be held vicariously liable for any negligence committed by the physicians pursuant to W. Va.Code § 55–7B–9(g) (2003) (Repl. Vol. 2008). In the alternative, the Cunninghams seek to hold Thomas Hospital vicariously liable under the theory that the various defendants to this lawsuit were engaged in a joint venture. We find no .error in the circuit court's award of summary judgment. Therefore, this case is affirmed.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In April 2007, Dr. Jan Cunningham (hereinafter individually referred to as "Dr. Cunningham") was taken to the Thomas Hospital Emergency Department by his wife, Lynn Cunningham. Dr. Cunningham was suffering from a physical ailment, the details of which are not necessary to our resolution of the issues herein presented. Upon arrival at the hospital, Dr. Cunningham was evaluated by a physician in the Emergency Department and referred to Hossam Tarakji, M.D., a hospitalist[1] and a defendant in this action

(hereinafter referred to as "Dr. Tarakji"). Dr. Tarakji admitted Dr. Cunningham[2] into the hospital, and provided care and treatment to Dr. Cunningham during his hospitalization. During a period when Dr. Tarakji was on vacation, Dr. Cunningham received treatment and care from another hospitalist associated with Dr. Tarakji, Thomas J. Rittinger, M.D. (hereinafter referred to as "Dr. Rittinger"), who is also a defendant in this action. Dr. Rittinger arranged for a consultation with a surgeon, Richard A. Fogle, M.D. (hereinafter referred to as "Dr. Fogle"), another defendant in this action. Dr. Fogle performed exploratory surgery within a few days of Dr. Cunningham's admission to the hospital. Following the surgery, Dr. Cunningham developed a serious infection that apparently resulted from the surgery. Dr. Cunningham ultimately required several follow-up surgeries[3] and alleges that he has suffered permanent injury as a result of the infection.

Thereafter, Dr. Cunningham filed the instant medical malpractice action against Thomas Hospital, Dr. Tarakji, Dr. Rittinger, and Dr. Fogle. Also included as defendants in this malpractice action are Hospitalist Medicine Physicians of Kanawha County, PLLC (hereinafter referred to as "Hospitalist Medicine"), and Delphi Healthcare Partners, Inc. (hereinafter referred to as "Delphi"). Doctors Tarakji and Rittinger were employed by Hospitalist Medicine and treated patients exclusively at Thomas Hospital in accordance with a contractual relationship between Thomas Hospital and Hospitalist Medicine. Delphi contracted with Thomas to provide a "surgicalist" program. The parties

---

1. A "hospitalist" is defined as

   1. A physician whose professional activities are performed chiefly within a hospital (e.g., anesthesiologist, emergency department physician, intensivist (intensive care specialist), pathologist, and radiologist).... 2. A primary care physician (not a house officer) who assumes responsibility for the observation and treatment of hospitalized patients and returns them to the care of their physicians when they are discharged from the hospital.

   *Stedman's Medical Dictionary for the Health Professions and Nursing* 731 (6th ed. 2008). *See also Dorland's Illustrated Medical Dictionary* 884 (31st ed. 2007) (defining "hospitalist" as "[a] physician specializing in hospital inpatient

care"); *Mosby's Medical Dictionary,* 902 (7th ed. 2006) (same).

2. In the course of the admission process, Dr. Cunningham and his wife executed certain admission papers. One of those papers, titled "Authorization for Care," included the statement that "I understand that most of the physicians on the staff of this hospital are not employees or agents of the hospital, but rather, are independent contractors who have been granted the privilege of using the hospital's facilities for the care and treatment of the physician's patients."

3. The follow-up surgeries were not performed by Dr. Fogle.

to this appeal represent that the "surgicalist program" was a unique arrangement, similar to a hospitalist program, that provided the hospital with surgeons.[4] Dr. Fogle provided surgical services at Thomas Hospital in accordance with a contract he executed with Delphi.[5] The Cunninghams sought to hold Thomas Hospital vicariously liable for the alleged negligence of Drs. Tarakji, Rittinger and Fogle on the theory that the doctors were employees or actual agents of the hospital, or that the doctors and corporate defendants Delphi and Hospitalist Medicine were engaged in a joint venture with the hospital.

Thomas Hospital initially filed a motion for summary judgment in September 2009. The circuit court denied the motion by order entered on February 1, 2010. Thereafter, on April 23, 2010, Thomas Hospital filed a second motion for summary judgment. In its motion, Thomas Hospital argued that Drs. Tarakji, Rittinger and Fogle were not employees, actual agents, or joint venturers of the hospital. Therefore, Thomas Hospital asserted that there was no viable evidence upon which to hold the hospital vicariously liable for the actions of any of the aforementioned doctors. In addition, on April 29, 2010, Thomas Hospital filed a motion asking the circuit court to reconsider its February 1, 2010, order denying Thomas Hospital's first motion for summary judgment. By order entered February 3, 2011, the circuit court granted Thomas Hospital's motion to reconsider and, in addition, granted summary judgment in favor of Thomas Hospital. In granting summary judgment, the circuit court concluded that, when viewing the evidence in the light most favorable to the Cunninghams, Drs. Tarakji, Rittinger and Fogle were not actual agents or employees of Thomas Hospital at the time of the alleged negligence, and there was no joint venture. It is from this order that the Cunninghams now appeal.

4. The parties represent that the surgicalist program at Thomas Hospital was the first program of its type in the United States.

5. Additional details regarding the various contracts and employment relationships between

## II.

## STANDARD OF REVIEW

This case is before this Court for review of an order granting summary judgment to Thomas Hospital. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In conducting this *de novo* review, we recognize that,

"'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*, 192 W.Va. 189, 451 S.E.2d 755. Moreover,

[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter, id.* Finally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter, id.* With due consideration for the foregoing standards governing our review, we address the issues presented.

## III.

## DISCUSSION

In this action, the Cunninghams seek to hold Thomas Hospital vicariously liable for

Thomas Hospital and the remaining defendants will be discussed in our analysis of the issues raised in this appeal. See *infra* Section III of this opinion titled "Discussion."

the allegedly negligent actions of the three defendant doctors. With respect to vicarious liability in causes of action for medical malpractice, the West Virginia Medical Professional Liability Act states:

(g) Nothing in this article is meant to preclude a health care provider from being held responsible for the portion of fault attributed by the trier of fact to any person acting as the health care provider's agent or servant or to preclude imposition of fault otherwise imputable or attributable to the health care provider under claims of vicarious liability. *A health care provider may not be held vicariously liable for the acts of a nonemployee pursuant to a theory of ostensible agency unless the alleged agent does not maintain professional liability insurance covering the medical injury which is the subject of the action in the aggregate amount of at least one million dollars.*

W. Va.Code § 55–7B–9 (2003) (Repl. Vol. 2008) (emphasis added). In accordance with the foregoing provision, which precludes an ostensible agency theory of vicarious liability,[6] the Cunninghams have argued that Drs. Tarakji, Rittinger and Fogle were actual agents or employees of the hospital, and, therefore, Thomas Hospital may be held vicariously liable for their alleged negligence. In the alternative, the Cunninghams have asserted that the three defendant doctors, along with Delphi and Hospitalist Medical, were involved in a joint venture with Thomas Hospital. We will consider the evidence presented with respect to each of these theories to ascertain whether summary judgment was proper.

### A. Actual Agents or Employees

■ This Court previously has explained that "one must examine the facts of a particular case to determine whether an agency relationship exists." *Arnold v. United Cos. Lending Corp.,* 204 W.Va. 229, 239, 511 S.E.2d 854, 864 (1998). This Court further has clarified that,

"[t]o ascertain whether a workman is an employee or an independent contractor each case must be resolved on its own facts and ordinarily no one feature of the relationship is controlling, but all must be considered together." Syl. pt. 1, *Myers v. Workmen's Compensation Commissioner,* 150 W.Va. 563, 148 S.E.2d 664 (1966). Syl. pt. 2, *Barkley v. State Workmen's Comp. Comm'r,* 164 W.Va. 777, 266 S.E.2d 456 (1980). Moreover,

[o]ne who would defend against tort liability by contending that the injuries were inflicted by an independent contractor has the burden of establishing that he neither controlled nor had the right to control the work, and if there is a conflict in the evidence and there is sufficient evidence to support a finding of the jury, the determination of whether an independent contractor relationship existed is a question for jury determination.

Syl. pt. 1, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976). *See also* Syl. pt. 2, *Goodwin v. Willard,* 185 W.Va. 321, 406 S.E.2d 752 (1991) (per curiam) (" 'When the evidence is conflicting the questions whether the relation of principal and agent existed and, if so, whether the agent acted within the scope of his authority and in behalf of his principal are questions for the jury.' Syl. pt. 2, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958)."); Syl. pt. 3, *Spencer v. Travelers Ins. Co.,* 148 W.Va. 111, 133 S.E.2d 735 (1963) ("Where the evidence involving an independent contractor or employee is conflicting, or if not conflicting, where more than one inference can be derived therefrom, the question is one of fact for jury determination, but where the facts are such that only one reasonable inference can be drawn therefrom, the question is one of law for the court to decide.").

■ The "seminal case establishing the test for whether an independent contractor relationship exists is *Paxton v. Crabtree,* 184 W.Va. 237, 400 S.E.2d 245 (1990)." *Shaffer v. Acme Limestone Co., Inc.,* 206 W.Va. 333,

---

**6.** It has been represented by Thomas Hospital that each of the defendant doctors had at least one million dollars of professional liability insurance coverage at the time relevant to this lawsuit. The Cunninghams do not dispute this assertion.

340, 524 S.E.2d 688, 695 (1999). The *Paxton* court established that

> [t]here are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of respondeat superior: (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

Syl. pt. 5, *Paxton,* 184 W.Va. 237, 400 S.E.2d 245. Thus, we consider the foregoing elements, with particular attention to the last element, power of control, to determine whether the evidence was in conflict or whether more than one inference could be drawn therefrom. In conducting this analysis, we will consider particular contractual terms that pertain to the elements of the test, while also upholding the established principle that the mere existence of a contract, or the contractual characterization of a relationship as involving an independent contractor, is insufficient to conclusively resolve the true nature of the relationship at issue:

> This Court has recognized that the mere fact that work is being done "pursuant to a contract" establishes the independent contractor exception to *respondeat superior,* and that language or terms that may be used to label a business or working relationship—whether in writing or otherwise—are not determinative on the issue of whether an "independent contractor" exception is established for the purpose of relieving an employing party from potential respondeat superior liability. As we stated in *Kirkhart v. United Fuel Gas Co.,* 86 W.Va. 79, 102 S.E. 806 (1920): "[p]roving that the work was being done under a contract does not constitute the defense of independent contractor."

*Zirkle v. Winkler,* 214 W.Va. 19, 23, 585 S.E.2d 19, 23 (2003) (per curiam).

■■■ **1. Selection and engagement of the servant.** The evidence pertaining to the engagement of Dr. Fogle, and Drs. Tarakji and Rittinger, indicate that they were not hired by Thomas Hospital. Instead, Dr. Fogle was hired by Delphi, and Drs. Tarakji and Rittinger were hired by Hospitalist Medicine.

With respect to Dr. Fogle, the contract between Delphi and Thomas Hospital expressly specified that Delphi would "solicit and recruit qualified physicians." The evidence established that Delphi pre-screened Dr. Fogle and selected him as a candidate to serve their obligation to Thomas Hospital. Dr. Fogle's deposition testimony pertaining to his hiring was as follows:

Q: Did you interview here with somebody at Thomas? How did that come about?

A: It was Delphi, and then Delphi brought me here and brought Doctor Doromal here, and we interviewed with Thomas Hospital.

Thus, Delphi first selected Dr. Fogle and then presented him to Thomas Hospital as a candidate to serve as a surgicalist at the hospital. This process was in accordance with the contractual arrangement between Delphi and Thomas Hospital, which expressly specified that "all physicians recruited by [Delphi] must be approved and accepted by" Thomas Hospital. Accordingly, Thomas Hospital had the opportunity to evaluate Dr. Fogle to determine whether he was a good fit with the hospital. Nevertheless, the evidence before the court at the summary judgment stage clearly established that Dr. Fogle was recruited and hired by Delphi. In other words, to utilize the language of *Paxton,* it was Delphi, and not Thomas Hospital, who was responsible for the "[s]election and engagement" of Dr. Fogle. Syl. pt. 5, *Paxton,* 184 W.Va. 237, 400 S.E.2d 245.

The evidence with respect to Drs. Tarakji and Rittinger was similar. The contract between Thomas Hospital and Hospitalist Medicine expressly provided that Thomas Hospital "shall have the right to approve any [Hospitalist Medicine] Physician or Mid–Level Provider working for [Hospitalist Medicine], which approval shall not be unreasonably withheld, conditioned, or delayed." The evidence establishes that Drs. Tarakji and Rittinger were recruited by Hospitalist Medicine. In this respect, Dr. Tarakji testified by deposition that he was contacted by Hospitalist Medicine and hired by the same. He

stated that he was not hired by Thomas Hospital. Likewise, Dr. Rittinger, in his deposition, testified that he was first contacted by Hospitalist Medicine to discuss his interest in becoming a hospitalist.

Based upon the foregoing, the evidence regarding the first element of the *Paxton* test presents no factual question. Rather, the evidence demonstrates that Dr. Fogle was recruited and engaged by Delphi, and Drs. Tarakji and Rittinger were recruited and engaged by Hospitalist Medicine. Thus, factor one favors the conclusion that Drs. Fogle, Tarakji and Rittinger were not agents of Thomas Hospital.

**2. Payment of compensation.** The second element of the *Paxton* test for determining the existence of a master-servant relationship is the payment of compensation. The record evidence shows that Thomas Hospital did not pay compensation to Drs. Fogle, Tarakji or Rittinger. Instead, it is undisputed that Delphi and Hospitalist Medicine were compensated by Thomas Hospital for the services rendered by the physicians to the hospital. Then, Delphi paid Dr. Fogle's compensation and Hospitalist Medicine paid Drs. Tarakji and Rittinger. It also is noteworthy that Thomas Hospital did not bill patients for the services provided by these three physicians, and Thomas Hospital did not pay for the physicians' malpractice insurance. Thus, there is no question of fact with respect to the second element of the *Paxton* test. This factor favors the conclusion that Drs. Fogle, Tarakji and Rittinger were not agents of Thomas Hospital.

**3. Power of dismissal.** The third element of the *Paxton* test examines the power of dismissal. Pursuant to the contract between Delphi and Thomas Hospital, a physician providing services at the hospital was required to comply with the bylaws, rules and regulations, and policies and procedures of the hospital. Upon the failure of a physician to so comply, said physician would be removed from the "schedule of Physicians providing Services in Hospital." In addition, Thomas Hospital could give notice to Delphi that it deemed the performance of a physician to be detrimental to the "health or safety" of the hospital's patients. If Delphi and Thomas did not reach a mutually acceptable resolution within thirty days of such notice, then Delphi was required to replace the physician. There is nothing in this agreement that granted Thomas Hospital the authority to terminate Dr. Fogle's agreement with Delphi. The agreement between Dr. Fogle and Delphi set out the conditions under which that agreement would be terminated.

Similarly, the contract between Hospitalist Medicine and Thomas Hospital provided that the physicians rendering services thereunder, which were Drs. Tarakji and Rittinger, were required to maintain certain fundamental qualifications, as well as other qualifications. If a physician failed to maintain the fundamental qualifications, he or she would no longer be eligible to provide services at Thomas Hospital. Under this circumstance, Hospitalist Medicine would be required to assign another physician to perform the contracted-for services. If the physician failed to maintain the other qualifications, the parties had ninety days in which to reach a mutually agreeable resolution. The failure to reach a resolution would result in the loss of the physician's eligibility to provide services at Thomas Hospital, and Hospitalist Medicine would be required to assign another physician to perform the contracted-for services. There is nothing in this agreement that granted Thomas Hospital the power to dismiss Dr. Tarakji or Dr. Rittinger. To the contrary, the contracts between Hospitalist Medicine and Drs. Tarakji and Rittinger expressly set out the conditions under which the physicians could be terminated.

Accordingly, the third element of the *Paxton* test creates no question of fact and favors the conclusion that Drs. Fogle, Tarakji and Rittinger were not agents of Thomas Hospital.

**4. Power of control.** As Syllabus point 5 of *Paxton* recognizes, the fourth element of the test, power of control, is the determinative factor in a master-servant relationship analysis. *See also* Syl. pt. 3, *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994) ("One of the essential elements of an agency relationship is the existence of some degree of control by the principal over

the conduct and activities of the agent."); Syl. pt. 2, *Myers v. Workmen's Comp. Comm'r,* 150 W.Va. 563, 148 S.E.2d 664 (1966) ("In determining whether a workman is an employee or an independent contractor, the controlling factor is whether the hiring party retains the right to control and supervise the work to be done."). With regard to the element of control, this Court has held:

If the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor, and the determining factor in connection with this matter is not the use of such right of control or supervision but the existence thereof in the person for whom the work is being done.

Syl. pt. 2, *Spencer v. Travelers Ins. Co.,* 148 W.Va. 111, 133 S.E.2d 735 (1963). However, the entity engaging an independent contractor is not required to surrender all control in order to maintain an independent contractor relationship.

An owner who engages an independent contractor to perform a job for him or her may retain broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the contract—including the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations in the work—without changing the relationship from that of owner and independent contractor, or changing the duties arising from that relationship.

Syl. pt. 4, *Shaffer v. Acme Limestone Co., Inc.,* 206 W.Va. 333, 524 S.E.2d 688 (1999).

The Cunninghams cite three cases which they assert represent instances where this Court has applied agency principles in the hospital/physician context and found the hos-

pital to be liable. However, two of these cases are distinguishable from the case *sub judice* because each relied upon the fact that *the hospital* selected the physician and/or insisted that the patient be treated by a particular physician of the *hospital's* choice.[7] In the instant case, there is no evidence that Thomas Hospital insisted that Dr. Cunningham be treated by Drs. Fogle, Tarakji or Rittinger.

The third case cited by the Cunninghams is *Thomas v. Raleigh General Hospital,* 178 W.Va. 138, 358 S.E.2d 222 (1987). *Raleigh General* relied in significant part upon the fact that the hospital had selected the physician (an anesthesiologist);[8] however, the Court also relied on the fact that the doctor was a "manager" of the hospital:

Dr. Carozza held the positions of Director of Respiratory Services and Chief of Anesthesiology at the hospital. The hospital gave him an office and a stipend for these duties. There is a factual question as to whether these duties and compensation would create a relationship where Dr. Carozza was the "manager" of anesthesiology at the hospital. A hospital cannot absolve itself from liability of a treating physician where that physician was a "manager" of the hospital. *See Vaughan v. Memorial Hosp.,* 100 W.Va. 290, 293, 130 S.E. 481, 482 later app., 103 W.Va. 156, 136 S.E. 837 (1925).

178 W.Va. at 141, 358 S.E.2d at 225. The Cunninghams contend that Dr. Fogle was a director of surgery and performed administrative, *i.e.* management, duties on behalf of the hospital. We note, however, that Dr. Fogle's administrative duties were set out in his contract with Delphi and pertained to the surgical program that Delphi had contractually agreed to provide for Thomas Hospital. Furthermore, unlike the doctor in *Raleigh General* who received a stipend from the

---

7. *See* Syl. pt. 1, *Vaughan v. Mem'l Hosp.,* 100 W.Va. 290, 130 S.E. 481 (1925) ("A hospital conducted for private gain is liable to its patient for injuries sustained by him in consequence of incompetency or negligence of a physician *treating him at its instance,* under a contract to furnish him proper treatment." (emphasis added)); *Jenkins v. Charleston Gen. Hosp. & Training Sch.,* 90 W.Va. 230, 110 S.E. 560 (1922) (same).

8. *See* Syl. pt. 2, *Thomas v. Raleigh Gen. Hosp.,* 178 W.Va. 138, 358 S.E.2d 222 (1987) ("Where a patient goes to a hospital seeking medical services and is forced to rely on the hospital's choice of physician to render those services, the hospital may be found vicariously liable for the physician's negligence.").

hospital, the additional compensation received by Dr. Fogle for serving as a director was paid by Delphi. Thus, we find the Cunninghams' reliance on *Raleigh General* to be unpersuasive in establishing that Thomas Hospital exercised a level of control over Dr. Fogle such that he was an employee thereof.

Moreover, we have carefully and thoroughly reviewed the record in this case and find no evidence to establish a question of fact with regard to the element of control exercised by the hospital over Drs. Fogle, Tarakji and Rittinger. On the contrary, the evidence is clear that the hospital merely exercised a level of control commensurate with that approved by this Court in *Shaffer v. Acme Limestone Co., Inc.* To reiterate, under *Shaffer*, Thomas Hospital was permitted to exercise "broad general powers of supervision and control as to the results of the work so as to insure satisfactory performance of the contract[.]" Syl. pt. 4, *Shaffer*, 206 W.Va. 333, 524 S.E.2d 688.

Additional evidence relied upon by the Cunninghams to establish control by Thomas Hospital is simply unpersuasive. For example, the Cunninghams assert that Thomas Hospital set the schedules for the three physicians. This assertion is not a correct interpretation of the evidence. Instead, the evidence considered by the circuit court in granting summary judgment demonstrates that Delphi was contractually obligated to provide scheduling services for Dr. Fogle. Similarly, according to the contract between Hospitalist Medicine and Thomas Hospital, Dr. Tarakji, as the on-site medical director, was to "[s]chedule medical coverage by HMP [Hospitalist Medicine] Physicians in accordance with the terms of the Agreement."

■ The Cunninghams also rely on the fact that Thomas Hospital provided office space and secretarial support to the physicians. We find this evidence inadequate to establish a level of control that would overcome the physicians' independent-contractor status.

■ The Cunninghams further assert that the doctors were obligated to provide services twenty-four hours per day, seven days per week to the hospital. This was simply a term included in Thomas Hospital's contracts with Delphi and Hospitalist Medicine. Physicians providing the services for which they are contractually obligated does not establish control by the hospital over said physicians.

■ A final example of the evidence relied upon by the Cunninghams is their contention that Thomas Hospital's control over Dr. Fogle was evidenced by the fact that he was required to work exclusively at the hospital. Notably, however, while there is an exclusivity provision in the Delphi/Thomas Hospital agreement, Dr. Fogle's contract with Delphi contained a "Freedom to Contract" clause that stated "[i]t is agreed that Physician may engage in any other professional activities or business during the term of this Agreement so long as such activities are not inconsistent with and do not conflict with Physician's contractual obligations hereunder." Thus, this evidence does not create a question with regard to Thomas Hospital's control over Dr. Fogle.

■ Having carefully reviewed the evidence that was before the circuit court when it ruled on Thomas Hospital's summary judgment motion, and having considered that evidence in light of the factors set out by this court in *Paxton*, we agree with the circuit court's conclusion that Drs. Fogle, Tarakji and Rittinger were not agents or employees of Thomas Hospital. Therefore, we affirm the circuit court's award of summary judgment with respect to the Cunningham's vicarious liability theory.

### B. Joint Venture

■ As an alternate theory, the Cunninghams contend that Thomas Hospital was vicariously liable for the actions of the defendant physicians insofar as they were engaged in a joint venture.

"A joint venture or, as it is sometimes referred to, a joint adventure, is an association of two or more persons [or entities] to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The con-

tract may be oral or written, express or implied." Syl. pt. 2, *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987).

Syl. pt. 5, *Armor v. Lantz*, 207 W.Va. 672, 535 S.E.2d 737 (2000). In addition,

[w]e have noted that, intrinsic to a joint venture, is the concept of mutual efforts to promote the business, the success of which would accrue to the benefit of all parties:

To constitute a joint adventure the parties must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, but the contributions of the respective parties need not be equal or of the same character. There must, however, be some contribution by each party of something promotive of the enterprise.

*Pownall v. Cearfoss*, 129 W.Va. 487, 497–498, 40 S.E.2d 886, 893 (1946) (citation omitted).

*Sipple v. Starr*, 205 W.Va. 717, 725, 520 S.E.2d 884, 892 (1999) (finding genuine issues of material fact existed as to whether fuel distributor, convenience store, and store owner engaged in a joint venture).

The Cunninghams assert that the various contracts among Thomas Hospital, Delphi, Hospitalist Medicine and the three defendant physicians were for the sole purpose of providing medical services at Thomas Hospital for a profit. The Cunninghams also direct the Court's attention to the following:

[T]he United States Court of Appeals for the First Circuit has held that when a hospital grants staff privileges to a physician and shares in the profits earned by that physician at the hospital, the hospital is also responsible for acts of malpractice committed by the physician. *Suárez Matos v. Ashford Presbyterian Community Hosp.*, 4 F.3d 47, 52 (1st Cir.1993) (emphasis added). In that situation, as [a] matter of law the hospital is a joint actor in a joint enterprise. *Id.*

*Pages–Ramirez v. Hospital Espanol Auxillo Mutuo De Puerto Rico, Inc.*, 547 F.Supp.2d 141, 151 (D.Puerto Rico 2008).

Thomas Hospital responds that " '[p]ossibly the most important criterion of a joint venture is joint control and management of the property used in accomplishing its aims.' *Barton v. Evanston Hosp.*, 159 Ill.App.3d 970, 974, 111 Ill.Dec. 819, 513 N.E.2d 65, 67 (1987) (citation omitted)." *Armor v. Lantz*, 207 W.Va. 672, 680, 535 S.E.2d 737, 745 (2000). Thomas Hospital argues that there was no joint venture in this instance because Thomas Hospital did not have the right to control the physicians in their provision of medical treatment, and, likewise, the physicians and corporations (Delphi and Hospitalist Medicine) did not have the right to control Thomas Hospital when it came to hospital functions or property.

The *Armor v. Lantz* Court went on to state:

Importantly, "[t]he control required for imputing negligence under a joint enterprise theory is not actual physical control, but the legal right to control the conduct of the other with respect to the prosecution of the common purpose." *Slaughter v. Slaughter*, 93 N.C.App. 717, 721, 379 S.E.2d 98, 101 (1989) (citation omitted).

*Armor*, 207 W.Va. at 680, 535 S.E.2d at 745.

■■ The circuit court found, as a matter of law, that

the Plaintiffs cannot prove the essential element of "joint venture", i.e., they cannot prove that Thomas Memorial Hospital exercised the right to control the defendant physicians' practice of medicine. Similarly, there is no evidence that the other defendants had the right to control the Hospital's practices with respect to its business. As such, the theory of joint venture cannot provide an independent basis for liability against Thomas Memorial Hospital.

We find no error in this conclusion and, therefore, affirm the circuit court's summary judgment on the issue of a joint venture.

## IV.

## CONCLUSION

For the reasons stated in the body of this opinion, we find the Circuit Court of Kanawha County did not err in granting summary judgment in favor of Thomas Hospital based

upon the circuit court's conclusion that Drs. Fogle, Tarakji and Rittinger were not agents or actual employees of Thomas Hospital. We further find that the circuit court did not err in concluding that Thomas Memorial was not engaged in a joint venture with the other defendants to this action. Accordingly, the circuit court's order of February 3, 2011, is affirmed.

Affirmed.

Justice McHUGH, deeming himself disqualified, did not participate.

Judge WILKES, sitting by temporary assignment.