*In re* Lic. Manuel Medina Adorno, abogado notario.

*Número:* 2315    *Resuelto:* 17 de junio de 1982

178

*Govén D. Martínez Surís,* Director de Inspección de Notarías; *José A. Cuevas Segarra,* abogado del querellado; *Manuel Medina Adorno, pro se,* en reconsideración.

PER CURIAM: El notario Manuel Medina Adorno autorizó el 19 de mayo de 1980 la escritura número trece de su protocolo de ese año, en que don Pancracio Sánchez Pérez aparece como otorgante de un testamento abierto. Al inspeccionar su notaría, se percató el Inspector de Protocolos de que el otorgante no firmó la escritura. Requerido el notario para que explicara dicha omisión, expresó lo siguiente, en carta al Director de Inspección de Notarías de 30 de abril de 1982:

> Correctamente se informó de [*sic*] que la Escritura Número Trece (13) de Testamento Abierto no había sido firmada por el testador. Reunidos est[á]bamos en la casa del testador, testigos y algunos miembros de la familia y en el momento mismo que iba a firmar el testador sonó el teléfono. A su regreso me entregó el bolígrafo y se continuó el otorgamiento de dicho testamento sin percatarnos de que el testador de referencia no había firmado. Posteriormente no descubrí el error y ello a pesar de que de vez en cuando examino mis escrituras. Es esta la primera vez que cometo tal irregularidad.
>
> En mi afán de subsanar mi error tanto como fuera posible visité a la viuda, Doña María Rivera Rivera y ella me informó de [*sic*] que su esposo y testador en este caso había muerto el día 9 de mayo del 1981 y que sus bienes fueron distribuidos

en armonía con el Testamento Abierto que otorgó ante mí con fecha del 19 de mayo del 1980.

Informado este Tribunal sobre estos particulares, por resolución del 20 de mayo de 1982, requerimos del notario mostrar causa por la cual no deba ser suspendido del ejercicio de la notaría. Su contestación a dicho requerimiento es una reafirmación de lo expresado en dicha carta, expresando además: "Que el error involuntario aludido anteriormente no causó daño alguno y que en el futuro, este notario optará por usar un método para rectificar las firmas en testamentos o en cualquier documento público o privado."

▇▇▇ Ante la seriedad de la falta cometida, no podemos hacer menos que disponer la separación de este notario del ejercicio de la notaría. Es obvio, según surge de la explicación dada por el notario, que la unidad de acto en el otorgamiento del testamento fue interrumpida al ausentarse el testador por tres o cuatro minutos para atender una llamada telefónica precisamente en el momento en que debía firmar, como se requiere, luego de darse lectura al instrumento. La falta de diligencia y de la debida atención por parte del notario a su delicada función como depositario de la fe pública permitió que ese incidente causara la omisión de la firma del testador, sin la cual el instrumento es nulo.

▇▇▇ No es atenuante que, muerto el señor testador, se cumpliera lo dispuesto en el documento como su última voluntad. Notamos que esta información surge de una declaración jurada prestada por su viuda, declaración que no tuvo escrúpulos el referido notario de autorizar bajo su registro de afidávit. Dice el notario que su "error involuntario" no causó daño alguno. No tenemos constancia de que las personas llamadas a suceder al señor Pancracio Sánchez Pérez ab intestato, quienes pudieran haber sido perjudicadas al darse validez al llamado testamento, hayan sido informadas de la omisión que produce su nulidad. No aparece del expediente ante nos, que dichas personas estén dis-

puestas a acatar, con conocimiento de ello, las disposiciones de última voluntad consignadas en el instrumento.

Por último, valga señalar que el historial del notario al que aquí nos referimos revela previos incumplimientos con las disposiciones legales que regulan el ejercicio del notariado. Por resolución del 23 de diciembre de 1965, ante una notificación tardía sobre el otorgamiento de una escritura de testamento, le previnimos contra futuras inobservancias de la Ley Notarial. Por resolución del 3 de abril de 1969, le impusimos una multa de $25, también por haber notificado tardíamente dos escrituras de testamentos abiertos. Por resolución del 13 de noviembre de 1980, le apercibimos de su deber de observar rigurosamente las disposiciones de la Regla 12(c) del Reglamento de este Tribunal en relación con la manera de notificar el otorgamiento de escrituras relativas a poderes, pues se obstinaba en hacerlo por correo ordinario en vez de por correo certificado como lo exige dicha Regla.

La última actuación del referido notario colma la copa de su manifiesta incapacidad para el ejercicio del notariado. El desempeño del notariado es una función delicada. El Estado no puede conferir la fe pública a quien toma sus deberes livianamente.

*En mérito de lo expuesto, se dictará resolución que decrete la separación del Sr. Manuel Medina Adorno del ejercicio del notariado y disponga que el Director de Inspección de Notarías se incaute de sus protocolos y registros de afidávit, cuidándose de que éstos cumplan los requisitos de Ley y queden guardados en debida forma.*

El Juez Asociado Señor Torres Rigual no participó en la consideración y decisión de este asunto.