Linda M. Daniels RECIO, Plaintiff,

v.

HOSPITAL DEL MAESTRO,
et al., Defendants.

Civ. No. 92–1847 (RLA).

United States District Court,
D. Puerto Rico.

March 30, 1995.

Kevin G. Little, Alberto J. Pérez Hernández, Law Offices David Efron, Río Piedras, PR, for plaintiff.

Manuel San Juan, Edgardo Vega López, Jimenez Graffam & Lausell, Doris Quiñones Tridas, Gonzalez Muñoz & Quiñones Tridas, San Juan, PR, for defendants.

ACOSTA, District Judge.

Plaintiff, LINDA DANIELS RECIO, instituted this action alleging medical malpractice against her treating physician, DR. RAFAEL SANCHEZ MONSERRAT and his insurer as well as HOSPITAL DEL MAESTRO and its insurer EVANSTON INSURANCE COMPANY. In essence, plaintiff claims that her medical condition was misdiagnosed, as a result of which she received improper and damaging treatment. Specifically, it is alleged that plaintiff "did not suffer from bronchial asthma as had been incorrectly diagnosed by defendants" and that "the defendants, as well as the medical and nursing staff at Hospital del Maestro, were negligent in failing to provide adequate diagnosis, treatment, medication and care for plaintiff in accordance with the generally recognized standards in the medical profession." *See* First Amended Complaint at paragraphs 8–9.

We have presently before us a Motion for Summary Judgment filed by ASOCIACION HOSPITAL DEL MAESTRO, INC. and its insurer EVANSTON INSURANCE COMPANY (hereinafter referred to collectively as the "HOSPITAL").

## I. *UNCONTROVERTED FACTS*

Having examined the relevant pleadings, admissions, depositions, medical records and other evidence submitted by the parties, the Court finds that there is no genuine issue as to the following facts material to the alleged liability of defendants ASOCIACION HOSPITAL DEL MAESTRO, INC. and EVANSTON INSURANCE COMPANY.

1. In early **1990**, plaintiff first began to receive medical evaluation and treatment from DR. RAFAEL SANCHEZ MONSERRAT, a specialist in pneumology, as a patient at the "Centro Neumológico", a private clinic located at the "Clínica Las Américas" in San Juan, Puerto Rico. *See* Plaintiff's deposition at page 112; Plaintiff's Answer to Defendants' Request for Admissions # 1; Selected medical records submitted with plaintiff's Opposition to defendants' Motion for Summary Judgment.

2. The "Centro Neumológico" is not owned, administered or operated by co-defendant ASOCIACION HOSPITAL DEL MAESTRO, INC. *See* Sworn Statement of María Mercedes Rivera Reyes, Administrator of Hospital del Maestro, at paragraph 5.

3. DR. RAFAEL SANCHEZ MONSERRAT was assigned to plaintiff by personnel from the "Centro Neumológico" who advised her that he was going to be "in charge of her case". Neither HOSPITAL DEL MAESTRO, ASOCIACION HOSPITAL DEL MAESTRO, INC. nor any of its agents or employees designated DR. RAFAEL SANCHEZ MONSERRAT to care for MS. DANIELS. *See* Plaintiff's deposition at page 112; Plaintiff's Answer to Defendants' Request for Admissions # 2 and Sworn Statement of María Mercedes Rivera Reyes, Administrator of Hospital del Maestro, at paragraph 4.

4. On or about **August 30, 1990,** plaintiff telephoned DR. SANCHEZ MONSERRAT complaining of severe respiratory difficulties. DR. SANCHEZ MONSERRAT instructed her to "go to the emergency room" at the HOSPITAL DEL MAESTRO where he enjoyed hospitalization privileges. The emergency room record listed DR. SANCHEZ MONSERRAT as plaintiff's treating physician. He diagnosed plaintiff's respiratory condition as "bronchial asthma" and treated her with corticosteroids, among other medications. Until the time of plaintiff's discharge from the HOSPITAL on **September 17, 1990,** DR. SANCHEZ MONSERRAT remained as her treating physician. *See* Plaintiff's deposition at 67; Selected medical records submitted in support of plaintiff's Opposition to defendants' Motion for Summary Judgment.

5. Plaintiff was subsequently hospitalized at HOSPITAL DEL MAESTRO upon orders of DR. SANCHEZ MONSERRAT from **October 5, 1990** to **November 1, 1990,** from **December 17, 1990** to **December 31, 1990,** and from **May 30, 1991** to **June 28, 1990.** During all of these hospitalizations, DR. SANCHEZ MONSERRAT remained as plaintiff's treating physician and assumed primary responsibility for diagnosis and treatment of her respiratory condition. *See* Plaintiff's deposition at 63–67, 113; Plaintiff's Answer to Request for Admission # 7; selected medical records submitted in support of plaintiff's Opposition to defendants' Motion for Summary Judgment.

6. Plaintiff testified during her deposition that at all relevant times she "relied primarily upon Dr. SANCHEZ Monserrat for diagnosis and treatment of her respiratory condition" and "primarily entrusted [to him] the diagnosis and treatment of her respiratory condition". *See* Plaintiff's deposition at 113; *see also* Plaintiff's Answers to Requests for Admission # 5 and 6. Plaintiff also indicated that she did not rely upon any other doctors and/or nurses at HOSPITAL DEL MAESTRO for diagnosis and treatment of her respiratory problems or condition. *Id.* at 113–114; *see also* Plaintiff's Answers to Requests for Admission # 8 and 9.

7. During the time DR. SANCHEZ MONSERRAT treated plaintiff, he was not employed by ASOCIACION HOSPITAL DEL MAESTRO, INC. but merely enjoyed hospitalization privileges at the institution. There was no contract or other arrangement between ASOCIACION HOSPITAL DEL MAESTRO, INC. and DR. SANCHEZ MONSERRAT which provided for remuneration for medical services rendered by him at the HOSPITAL. DR. SANCHEZ MON-

SERRAT never received a salary or any other type of economic compensation for exercising his privileges of admitting and treating patients at the HOSPITAL facilities and was never compensated by the HOSPITAL in any way for the admissions and/or medical attention he provided to the plaintiff. *See* Sworn Statement of Mr. Hugo Arenas, Finance Director for Hospital del Maestro; Sworn Statement of María Mercedes Rivera Reyes, Administrator of Hospital del Maestro, at paragraphs 2–3.

8. In order to qualify for privileges at the HOSPITAL, DR. SANCHEZ MONSERRAT was required to submit a petition. Upon considering his application, the HOSPITAL found DR. SANCHEZ MONSERRAT well qualified to be granted privileges, having had extensive training in his area of expertise, including a Fellowship in Pulmonary Diseases from Washington University and extensive practice as Chief of the Pulmonary Disease Department at Andrews Air Force Base in Washington D.C. *See* Sworn Statement of Dr. Juan Enrique Rizek Nassar, Chief of the Department of Internal Medicine of Hospital del Maestro, at paragraph 5.

9. From 1984, when he was initially granted privileges, through the periods during which he treated plaintiff, DR. SANCHEZ MONSERRAT's privileges at HOSPITAL DEL MAESTRO were never revoked or suspended and were renewed on a yearly basis. This physician consistently complied with all necessary requirements to retain those privileges including: maintaining appropriate medical malpractice insurance; providing evidence that his license to practice medicine in the Commonwealth of Puerto Rico was active; completing the required hours of continuing medical education and having been recommended by the Department of Medicine after observation and review of his performance. As far as the HOSPITAL was concerned, this physician always maintained an excellent reputation, had the proper training, experience and professional competence, and always remained in good physical and mental health. DR. SANCHEZ MONSERRAT was actively involved in faculty activities and was recognized by his peers as an excellent practition-er. Prior to the present case, he had never been sued for medical malpractice. *See* Sworn Statement of Dr. Juan Enrique Rizek Nassar, Chief of the Department of Internal Medicine of Hospital del Maestro, at paragraphs 5–6; Sworn Statement of María Mercedes Rivera Reyes, Administrator of Hospital del Maestro, at paragraphs 6–7.

10. At all times relevant to the facts alleged in the complaint, HOSPITAL DEL MAESTRO had a Quality Assurance Program which included the appointment of several committees assigned to monitor the quality of the medical services provided by the physicians practicing at the HOSPITAL such as the Credentials, Faculty, Infectious Diseases, Medical Records and Quality Assurance and Utilization committees. The Credentials Committee is responsible for evaluating requests for privileges. DR. SANCHEZ was favorably recommended by the particular faculty in which he practiced each time that he requested privileges. *See* Sworn Statement of Dr. Juan Enrique Rizek Nassar, Chief of the Department of Internal Medicine of Hospital del Maestro, at paragraphs 7–8.

11. Plaintiff's expert witnesses testified during their depositions that although DR. SANCHEZ MONSERRAT's initial diagnosis of bronchial asthma was not unreasonable, plaintiff's subsequent treatment with corticosteroids was negligent and resulted in considerable damages. However, neither of these experts expressed an opinion as to whether HOSPITAL DEL MAESTRO or any of its staff was negligent in any way. *See* Depo. Dr. Alvarez, pp. 62–65; Depo. Dr. Struhl, pp. 16, 36–38.

12. DR. STRUHL specifically indicated that, based on the information known to him, he did not believe that neither the HOSPITAL nor its staff had a duty to intervene in DR. SANCHEZ MONSERRAT's diagnosis and treatment of plaintiff in this case. *See* Depo. Dr. Struhl, pp. 44–48. When asked to assume that HOSPITAL DEL MAESTRO had a Quality Assurance Plan; that DR. SANCHEZ MONSERRAT was properly qualified, and that he had never had his privileges suspended had not been sued for malpractice more than two or three times, the expert opined that if all of this were true

he "could see no substandard care on the part of the hospital." Depo. Dr. Struhl at p. 48.

## II. *SUMMARY JUDGMENT*

A Motion for Summary Judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). In determining whether summary judgment is appropriate, it is the Court's obligation to review the record in the light most favorable to the party opposing the Motion and indulge all justifiable inferences favorable to that party. *See Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1994); *Yerardi's Moody St. Rest. v. Board of Selectmen,* 878 F.2d 16, 17 (1st Cir.1989); *Shinberg v. Bruk,* 875 F.2d 973, 974 (1st Cir.1989); *Nike Intern. Ltd. v. Athletic Sales, Inc.,* 689 F.Supp. 1235, 1247 (D.P.R.1988). Nevertheless, "the purpose of summary judgment is not to explore all the factual ramifications of the case, but to determine whether such exploration is necessary." *Briggs v. Kerrigan,* 431 F.2d 967, 968 (1st Cir.1970). Thus, a non-moving party cannot support its opposition to a motion for summary judgment merely upon conclusory allegations, improbable inferences, and unsupported speculation. *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990); *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith,* 839 F.Supp. 98, 103 (D.P.R. 1993). If the evidence presented by the non-moving party is "merely colorable" or "is not significantly probative", summary judgment may be granted. *Rogers v. Fair, supra* at 143 (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

## III. *HOSPITAL LIABILITY*

### A. RELATIONSHIP BETWEEN PATIENT AND PHYSICIAN

The law applicable to this diversity case is, of course, that of the Commonwealth of Puerto Rico. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The leading case from the Puerto Rico Supreme Court on the liability of a hospital for medical malpractice is *Márquez Vega v. Martínez Rosado,* 116 D.P.R. 397 (1985). Like the present case, *Márquez* was a suit for medical malpractice against both the physician and the hospital where he enjoyed privileges (but which did not employ him). As here, the plaintiff in *Márquez* was the doctor's private patient, and was hospitalized upon his instructions. The plaintiff claimed that the doctor had been negligent in performing surgery upon her at the hospital, and that the hospital was also liable since it received an economic benefit from allowing the physician to utilize its facilities to perform the operation.

The issue before the Court in *Márquez* was whether a hospital could be held jointly and severally liable based solely upon the medical malpractice of a doctor not employed by it, to whom it had granted hospitalization privileges. *Márquez,* 116 D.P.R. at 406. The Court made clear at the outset that a hospital has a continuous duty to: (a) carefully select the physicians to whom it grants privileges; (b) require that such physicians stay abreast of the most recent developments in their respective fields; (c) monitor the work of such physicians, intervening, when possible, in the face of an obvious act of medical malpractice by one of them; (d) discontinue the privileges of any physician in the event of repeated or crass acts of medical malpractice; and (e) keep reasonably up to date with respect to the most recent technological advances. *Márquez,* 116 D.P.R. at 409–410.

Absent a breach of one of these duties, however, the Court held that the hospital's liability for the malpractice of a doctor not employed by it who is granted privileges to use the facilities will depend upon whether the patient has primarily entrusted the care of her health to the hospital or to the physician. *Márquez,* 116 D.P.R. at 406. In a situation where the patient goes directly to

the hospital seeking medical aid and the hospital "provides" a doctor, the hospital will be jointly and severally liable for the negligent acts of said physician. *Id.* at 408. On the other hand, where the patient seeks medical care directly from the physician at his private office, and is later hospitalized upon the doctor's recommendation at an institution where the physician enjoys privileges, the situation is quite different. Under these circumstances, "as a general rule the hospital will not be liable for the negligent actions of the physician not employed by it, upon whom the patient has primarily entrusted her care in the first instance." *Id.* at 409.

■ In the case at bar, there is no controversy over the fact that plaintiff first began to receive medical evaluation and treatment from DR. RAFAEL SANCHEZ MONSERRAT as a patient at the "Centro Neumológico", a private clinic which is neither owned nor administered by the defendant HOSPITAL and which has no connection whatsoever with the services provided at the HOSPITAL DEL MAESTRO. MS. DANIELS was assigned to DR. SANCHEZ MONSERRAT by personnel from the clinic and advised that he was going to be "in charge of her case". At no time did ASOCIACION HOSPITAL DEL MAESTRO, INC. or any of its agents designate DR. SANCHEZ MONSERRAT to be plaintiff's physician.

There is, similarly, no controversy over the fact that during the time he treated plaintiff, DR. SANCHEZ MONSERRAT was not employed by the HOSPITAL but merely enjoyed privileges there. He had no contract or other arrangement with ASOCIACION HOSPITAL DEL MAESTRO, INC. whereby he would be paid for medical services rendered by him at the HOSPITAL. DR. SANCHEZ MONSERRAT never received a salary or remuneration for exercising his privileges of admitting and treating his patients at the HOSPITAL facilities. In the case of MS. DANIELS in particular, this physician was never compensated by the HOSPITAL in any way for the admissions and medical attention he provided her.

Additionally, there is no controversy over the fact that it was DR. SANCHEZ MONSERRAT who first diagnosed plaintiff's respiratory condition as "bronchial asthma" and instructed her to "go to the emergency room" at the HOSPITAL DEL MAESTRO where he treated her for an "asthma attack". At all relevant times thereafter, DR. SANCHEZ MONSERRAT acted as plaintiff's primary physician, treating her respiratory condition with, among other things, the corticosteroids which plaintiff contends were wrongfully prescribed. Hence, there is no question that it was DR. SANCHEZ MONSERRAT who made the allegedly erroneous diagnosis and prescribed the allegedly erroneous treatment which constitute the basis for this suit.

Plaintiff admitted during her deposition that she relied primarily upon DR. SANCHEZ MONSERRAT for diagnosis and treatment of her respiratory condition and entrusted her health care to him in the first instance. As a specialist in pneumology, DR. SANCHEZ MONSERRAT was primarily responsible for diagnosis and treatment of plaintiff's respiratory ailments. According to plaintiff, at no time did she rely upon any other doctors, nurses or other personnel at Hospital del Maestro for diagnosis and treatment of her condition. DR. SANCHEZ MONSERRAT was "in charge of her case" and hence responsible for all important decisions related to her condition.

The uncontroverted facts outlined above demonstrate that in this case, as in *Márquez*, there is simply insufficient evidence, as a matter of law, to hold the HOSPITAL jointly and severally liable for the allegedly negligent diagnosis and treatment provided by DR. SANCHEZ MONSERRAT. *See Márquez*, 116 D.P.R. at 409–410.

## B. RELATIONSHIP BETWEEN HOSPITAL AND PHYSICIAN

Plaintiff sets forth three (3) alternate theories of hospital liability. First, she claims that the medical malpractice allegedly committed by co-defendant DR. RAFAEL SANCHEZ MONSERRAT was so "obvious" that the HOSPITAL and its employees had an independent duty to intervene. Second, she claims that HOSPITAL DEL MAESTRO

was somehow responsible for her referral to DR. SANCHEZ MONSERRAT, or alternatively, that it could be held vicariously liable for the negligence of various unidentified non-party "staff physicians" who also allegedly incurred in malpractice by treating her with corticosteroids. Finally, she alleges that there must have been some sort of "financial entanglement" between the HOSPITAL and DR. SANCHEZ MONSERRAT such that the HOSPITAL might be held liable for the doctor's alleged malpractice in accordance with the First Circuit's interpretation of *Márquez* as set forth in *Suárez Matos v. Ashford Presbyterian Community Hospital, Inc.*, 4 F.3d 47 (1st Cir.1993). We address each of plaintiff's arguments *seriatim*.

### (1) Breach of the Duty to Intervene

■ A hospital has a continuous duty to "monitor the work of physicians, intervening, when possible, in the face of an obvious act of medical malpractice by one of them" and "discontinuing the privileges of any physician in the event of repeated or crass acts of medical malpractice." *Márquez*, 116 D.P.R. at 409–410. Plaintiff contends that the HOSPITAL could be held liable under this theory because it "failed to intervene in obvious acts of medical malpractice ..." *See* Plaintiff's Opposition at p. 13. According to MS. DANIELS, DR. SANCHEZ MONSERRAT's negligent treatment by the prolonged use of corticosteroids should have been "obvious" to the HOSPITAL's physicians and nurses such that they had a duty to intervene.

In support of this contention, plaintiff cites the deposition testimony of various expert witnesses who indicated that the diagnosis and treatment provided by DR. SANCHEZ MONSERRAT's were negligent. There is, however, no opinion by any of the experts to the effect that the particular circumstances of this case were such that the HOSPITAL had a duty to intervene. In fact, their testimony strongly suggests the opposite conclusion.

Both of plaintiff's experts agree that DR. SANCHEZ MONSERRAT's initial diagnosis of asthma was not unreasonable. *See* Depo. Dr. Jaime Alvarez, p. 62 ("nothing wrong with the initial diagnosis of asthma"); Depo. Dr. Struhl, p. 16 (initial diagnosis wrong, but "not unreasonable"). Moreover, when asked during their depositions whether they believed that HOSPITAL DEL MAESTRO or any of its staff were negligent in any way, neither of them provided such an opinion. *See* Depo. Dr. Alvarez, pp. 63–65 ("no opinion" as to whether Hospital del Maestro was negligent in granting privileges to Dr. SANCHEZ Monserrat, or as to whether the hospital staff and employees were in any way negligent); Depo. Dr. Struhl, pp. 36–38 ("could not say" whether or not the hospital "could be blamed for anything").

Furthermore, DR. STRUHL indicated that, based on the information he had been provided, he did not believe that either the HOSPITAL or its staff had a duty to intervene in DR. SANCHEZ MONSERRAT's diagnosis and treatment of plaintiff in this case. In response to questions posed by plaintiff's counsel, DR. STRUHL testified as follows:

Q. [D]oes the fact that for during four hospitalizations throughout one year, the hospital staff and the other doctors neglected to pick up the misdiagnosis, does that indicate anything to you regarding the standard of care at that hospital?

A. If the doctor had a good reputation at the hospital, if he has not been suspended, if he has not been reprimanded, if his privileges have not been withdrawn, if all of these things are true and he doesn't have many, many malpractice cases, more than three, four, five, then in that case *the doctor is the one that makes the decision;* unless he makes a terrible decision, like for example amputating the wrong leg, which has happened in cases I've been on, the other doctor should step in. *But in a situation like this, if the doctor is reputable, if the doctor has nothing against him, other doctors cannot step in, say: look this guy shouldn't do that ... and that would not be the function of the hospital, no.*

Depo. Dr. Struhl, pp. 44–45 (emphasis added).

Plaintiff's counsel subsequently requested DR. STRUHL to assume that he was on the Quality Assurance Board at HOSPITAL DEL MAESTRO, and asked whether based

on the medical records in this case he would have expected the other doctors who saw plaintiff "to step in and point out the misdiagnosis or the alterative diagnoses", to which he replied:

> I would say you got to leave it to the man in charge ... [a]nd also, even if they did step in and say something, or they should have, then they would be at fault, *but it wouldn't be the hospital* ...

Depo. Dr. Struhl at p. 46 (emphasis added).

Additionally, when asked whether the HOSPITAL nurses had a duty to intervene with DR. SANCHEZ MONSERRAT's diagnosis and treatment of the plaintiff in this case, DR. STRUHL replied:

> Very often a nurse may see something which she thinks is not right; she will then tell that to the doctor. Its still the doctor's decision whether he wants to accept her criticism or not. And, if he does not accept her criticism, even though she works for the hospital, *the hospital is not guilty of the fact that she made the criticism and it wasn't accepted. That's still the doctor.*

Depo. Dr. Struhl, pp. 45–46 (emphasis added).

Finally, DR. STRUHL was asked to assume that HOSPITAL DEL MAESTRO did have a Quality Assurance Plan, that DR. SANCHEZ MONSERRAT was properly qualified and had never had his privileges suspended and that he had not been sued for malpractice more than two or three times. He testified that, if all of this were true, he "could see no substandard care on the part of the hospital." Depo. Dr. Struhl at p. 48.

The HOSPITAL submitted evidence which stands uncontroverted by plaintiff to the effect that: it does have a Quality Assurance Plan; that DR. SANCHEZ MONSERRAT is well respected by his peers and has excellent professional qualifications; that neither his license nor privileges have never been suspended or revoked and that the HOSPITAL had no record or knowledge that he had ever been sued for malpractice prior to the present suit. *See* Sworn Statement of Dr. Juan Enrique Rizek Nassar, Director of Hospital del Maestro's Department of Internal Medicine, at paragraphs 4–10; Sworn Statement of María Mercedes Rivera Reyes, Administrator of Hospital del Maestro, at paragraphs 6–7.

The Court finds that the fact that DR. SANCHEZ MONSERRAT's privileges were at one point made probationary as an administrative reprimand for having failed to attend more than a certain percentage of staff meetings is inconsequential for purposes of this Order. There is no evidence that this reprimand bears any relation to the treatment afforded plaintiff and it can hardly be construed as a reflection upon the doctor's competence, let alone as a breach of the HOSPITAL's duty to supervise him. Even if these unlikely conclusions could somehow be drawn from DR. SANCHEZ's active probationary status, however, they would be precisely the sort of "improbable inferences" which this Court has previously made clear will not suffice to avoid summary judgment. *Hopgood,* 839 F.Supp. at 103.

In sum, there is simply no evidence from which a jury might reasonably find the HOSPITAL liable for breach of the duty to intervene. Plaintiff's conclusory allegations to the effect that the negligence of DR. SANCHEZ MONSERRAT was so obvious that the HOSPITAL was required to intervene do not rise beyond the level of conjecture. Indeed, the record before the Court, including the testimony of plaintiff's own experts, is entirely to the contrary.

### (2) Vicarious Liability

Under Puerto Rico law, when a patient goes directly to a hospital seeking medical aid and he is provided a doctor by the institution, the hospital will be vicariously liable for the negligent acts of the physician assigned. *Márquez,* 116 D.P.R. at 408. On the other hand, when the patient seeks medical care directly from a physician at his private office and is ordered hospitalized upon the doctor's recommendation at an institution where the physician enjoys privileges, the situation is quite different. Under these circumstances, "as a general rule the hospital will not be liable for the negligent actions of the physician not employed by it, upon whom the patient has primarily entrusted her care in the first instance." *Id.* at 409.

Plaintiff's second argument is to the effect that the defendant HOSPITAL might be held vicariously liable in this case insofar as (a) much of the alleged malpractice supposedly occurred during plaintiff's emergency admissions directly to HOSPITAL DEL MAESTRO; (b) agents of HOSPITAL DEL MAESTRO intervened and provided treatment to plaintiff during her admissions at HOSPITAL DEL MAESTRO; and (c) HOSPITAL DEL MAESTRO was "initially responsible for plaintiff's referral to the physician defendant." *See* Plaintiff's Opposition to Motion for Summary Judgment, at p. 16. We address each of these arguments in turn.

■ First, the Court finds no merit to plaintiff's contention that HOSPITAL DEL MAESTRO was responsible for her referral to the physician defendant. Although the medical records show that plaintiff's first contact with Hospital del Maestro came as a result of an emergency admission on **May 2, 1989,** this hospitalization was unrelated to the issues involved in this suit. At that time the Emergency Room doctor consulted a pneumologist, Dr. Fernando Regis Bonilla, who continued to follow up on plaintiff's condition after her discharge. *See* Depo. Linda Daniels at p. 111. Plaintiff began seeing Dr. Regis at his office at the "Centro Neumológico" located at "Clínica las Americas", and continued to do so for approximately nine (9) months. *Id.* When Dr. Regis left the "Centro Neumológico" to open an office in Mayaguez, plaintiff "was assigned" to DR. SANCHEZ MONSERRAT by personnel from the Clinic, who advised her that "he was going to be the one in charge of her case." *Id.* Thus, this particular physician was not assigned to be plaintiff's doctor by the HOSPITAL, but by personnel from a private, unaffiliated clinic where she had been receiving treatment for at least nine (9) months prior to her first coming in contact with DR. SANCHEZ MONSERRAT.

Although plaintiff's Opposition argues that she opted to continue with DR. SANCHEZ MONSERRAT based in part on her having been referred to the Instituto Neumológico by HOSPITAL DEL MAESTRO, the record is devoid of any evidence to support such a claim. Plaintiff has submitted no affidavit in support of this contention and the Court has found nothing in the deposition excerpts to even remotely suggest that plaintiff relied upon the HOSPITAL's referral or recommendation in deciding to become a patient of DR. SANCHEZ MONSERRAT. To the contrary, plaintiff's testimony is to the effect that she began seeing DR. SANCHEZ MONSERRAT because "he was recommended to [her] as a well known doctor in Puerto Rico." *Id.* Even though it is not clear from the transcript precisely who recommended the doctor to her, there is no indication in plaintiff's deposition that this physician was suggested or otherwise referred to her by the HOSPITAL.

■ The Court similarly finds no merit to plaintiff's contention that the HOSPITAL might be held liable for the alleged negligence of various unidentified non-party "staff physicians" who treated her while hospitalized. Although the medical records show that, apart from DR. SANCHEZ MONSERRAT, there were other doctors who provided treatment to plaintiff at HOSPITAL DEL MAESTRO, there is no expert testimony or other evidence to directly or indirectly support the claim that any of them incurred in medical malpractice. Puerto Rico law establishes a presumption that a physician's treatment is appropriate, and which presumption the plaintiff in a medical malpractice case bears the burden of rebutting by a preponderance of evidence. *See e.g., Cruz Azul v. Centro Médico de Puerto Rico,* 113 D.P.R. 179 (1983). Absent expert testimony specifically relating the unidentified "staff physicians" to the alleged malpractice, the law requires the fact finder to presume their actions were proper.

Furthermore, the evidence submitted by the parties suggests that, as her treating physician, DR. SANCHEZ MONSERRAT assumed primary responsibility for the plaintiff during all of her hospitalizations at HOSPITAL DEL MAESTRO. It was DR. SANCHEZ who made the initial diagnosis of "bronchial asthma-silent type"; performed the initial pulmonary function tests; prescribed treatment; advised plaintiff to "go to the emergency room" for her "asthma attack"; first treated her with corticosteroids

at the HOSPITAL, and who continued to treat her thereafter as her primary physician during all of her subsequent visits to HOSPITAL DEL MAESTRO.

Based on the foregoing, it is clear that DR. SANCHEZ MONSERRAT, not the HOSPITAL or any of its staff physicians, was the person responsible for the allegedly erroneous diagnosis and treatment at issue in this case.

Moreover, as the HOSPITAL points out, plaintiff admittedly relied upon DR. SANCHEZ MONSERRAT in the first instance for the diagnosis and treatment of her respiratory condition and thereafter primarily entrusted these matters to him. The deposition testimony is clear that plaintiff did not rely upon any other doctors and/or nurses at HOSPITAL DEL MAESTRO for such diagnosis and treatment. Accordingly, by her own admissions, as far as diagnosis and treatment of her respiratory problems were concerned, plaintiff placed herself exclusively in the hands of DR. SANCHEZ MONSERRAT.

In sum, there are no facts upon which plaintiff might reasonably base a theory of vicarious liability under *Márquez*. The uncontroverted evidence demonstrates that DR. SANCHEZ MONSERRAT was never employed by HOSPITAL DEL MAESTRO, nor assigned by the HOSPITAL to be plaintiff's physician. MS. DANIELS' own testimony shows that DR. SANCHEZ MONSERRAT was the only doctor upon whom she relied in the first instance for the allegedly erroneous diagnosis and treatment subject of this case. Under the doctrine of *Márquez*, the HOSPITAL cannot be held liable for the non-employee doctor's alleged negligence when the patient has primarily entrusted her care to him in the first instance.

### (3) Financial Entanglement

■ Relying on *Suárez Matos v. Ashford Presbyterian Community Hosp., Inc.*, 4 F.3d 47 (1st Cir.1993) plaintiff claims that HOSPITAL DEL MAESTRO might also be held liable because it "had the requisite financial entanglement" with DR. SANCHEZ MONSERRAT at the time of the alleged malpractice. *See* Plaintiff's Opposition at p. 18. In that case the Court of Appeals held that

"granting of staff privileges coupled with a joint sharing in profits" was sufficient to hold a hospital liable for the negligence of a staff physician as a "joint actor in a joint enterprise." *Id.* at 52. Plaintiff alleges in a sworn statement attached to her Opposition that she was never billed by DR. SANCHEZ MONSERRAT for the treatment provided during her admissions at HOSPITAL DEL MAESTRO. Therefore, she speculates that "to the extent Dr. SANCHEZ Monserrat was paid for these medical services, he was paid through some sort of fee-sharing arrangement", and argues that this case involves a situation identical to *Suárez Matos*, where the hospital and the physician are involved in a "joint financial enterprise".

Again, this theory of hospital liability is based upon conjecture and is therefore, inadequate to defeat summary judgment. Furthermore, the affidavit of the HOSPITAL's Finance Director makes it clear that there was never any "fee sharing" arrangement or other type of financial entanglement between HOSPITAL DEL MAESTRO and DR. SANCHEZ MONSERRAT. DR. SANCHEZ MONSERRAT was not employed by the HOSPITAL and there is no contract or other arrangement between then which provides for remuneration for medical services rendered by him at the HOSPITAL. DR. SANCHEZ MONSERRAT never received a salary or any other type of monetary compensation for exercising his privileges of admitting and treating his patients at the HOSPITAL facilities. Further, he was never compensated by the HOSPITAL in any way for the admissions and medical attention he provided to the plaintiff LINDA DANIELS RECIO. *See* Sworn Statement of Mr. Hugo Arenas, Finance Director for Hospital del Maestro.

Moreover, the HOSPITAL has never had any type of control over the billing practices of DR. SANCHEZ MONSERRAT or any other physician having admission privileges at the HOSPITAL and the invoices attached to plaintiff's Sworn Statement merely show that the HOSPITAL billed her for services rendered by it, such as hospitalization, drugs, laboratories, X–Rays, EKG, etc. *See* Finance Director's affidavit. There is in fact no evidence before the Court which demon-

strates that HOSPITAL DEL MAESTRO billed plaintiff for any medical services rendered by DR. SANCHEZ MONSERRAT.

Thus, the situation in the case before us is distinguishable from the facts in *Suárez Matos.* There is no evidence of financial entanglement and no reasonable basis to conclude that DR. SANCHEZ MONSERRAT and the HOSPITAL were engaged in a joint economic enterprise during plaintiff's various hospitalizations.

### (4) Summary

Under the Puerto Rico Supreme Court's decision in *Márquez,* when a patient seeks medical care directly from a physician at his private office, and is later hospitalized upon the doctor's recommendation at an institution where the physician merely enjoys privileges, the hospital will not be liable for the negligent actions of the physician not employed by it, upon whom the patient has primarily entrusted his care in the first instance. In this case, the uncontroverted evidence demonstrates that plaintiff sought treatment from DR. SANCHEZ MONSERRAT at a private clinic unrelated to the defendant HOSPITAL and primarily entrusted her health care to him. There is no genuine issue as to the fact that DR. SANCHEZ MONSERRAT was exclusively in charge of plaintiff's diagnosis and treatment. The HOSPITAL did not employ or assign him to treat her, and there was no "fee sharing" or any sort of financial arrangement between the HOSPITAL and the doctor. There is no evidence that the HOSPITAL should have questioned the physician's professional judgment or qualifications and no evidence of any breach of the HOSPITAL's duty to intervene in the face of crass acts of medical malpractice. Plaintiffs' conclusory allegations to the effect that the doctor's alleged malpractice was so "obvious" that the HOSPITAL should have intervened are unsupported by concrete evidence and were in fact rejected by her own expert during his deposition. On these facts, *Márquez* compels the entry of summary judgment in favor of the HOSPITAL and its insurer.

### IV. CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by ASOCIACION HOSPITAL DEL MAESTRO, INC. and it insurer EVANSTON INSURANCE CO. on **January 17, 1995** (docket No. 42 ) is hereby **GRANTED** [1] and all claims asserted by plaintiff against ASOCIACION HOSPITAL DEL MAESTRO, INC. and EVANSTON INSURANCE COMPANY are hereby **DISMISSED WITH PREJUDICE.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

1. *See also* the following responses filed all on January 17, 1995: Opposition (docket No. 43 ); Reply (docket No. 44 ) and Sur–Reply (docket No. 45 ).