EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Luis Nieves Nieves | 2007 TSPR 139 <br><br> 171 DPR _____ |

Número del Caso: TS-10199


Fecha: 3 de julio de 2007


Oficina de Inspección de Notarías:

                    Lcda. Marla D. Ríos Díaz
                    Directora Interina

Abogado de la Parte Peticionaria:

                    Por Derecho Propio




Materia: Conducta Profesional
       (La suspensión será efectiva el 6 de julio de 2007
          fecha en que se le notificó al abogado de su
          suspensión inmediata.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Luis Nieves Nieves                    TS-10199

PER CURIAM

San Juan, Puerto Rico, a 3 de julio de 2007.

El licenciado Luis Nieves Nieves, en adelante licenciado Nieves Nieves, fue admitido al ejercicio de la abogacía el 7 de julio de 1992 y al ejercicio del notariado el 29 diciembre de ese mismo año.

La Directora Interina de la Oficina de Inspección de Notarías presentó ante este Foro un escrito informándonos de ciertas deficiencias en la obra notarial del abogado de epígrafe.

Veamos los hechos que dieron pie al ejercicio de nuestra jurisdicción disciplinaria.

I

El 25 de abril de 2006, la licenciada Sharon Reyes Rodríguez, Inspectora de Protocolos de la Oficina de Inspección de Notarías, en adelante ODIN, le remitió a la Directora Interina de ODIN un escrito mediante el cual informó haber encontrado varias deficiencias en los protocolos del licenciado Nieves Nieves correspondientes a los años 2000, 2001, 2002 y 2003.

Indicó que para el año 2000, éste autorizó dos (2) testamentos abiertos sin dar fe de que los testigos conocían a los testadores. Indicó, además, que para el año 2001, autorizó dos (2) testamentos abiertos sin dar fe de conocimiento, o identificación de los testigos. Finalmente, indicó que en el año 2002, una vez más, éste autorizó un testamento abierto sin dar fe de conocimiento, o identificación de los testigos. Puntualizó que los protocolos para esos tres (3) años fueron aprobados con deficiencias.

Por otro lado, detalló que para el año 2003, el notario en cuestión autorizó una escritura de compraventa en la que no dio fe del conocimiento, o de la identificación de los comparecientes, ni se incluyó la firma de éstos al final del documento. Además, precisó que el notario había omitido aclarar ciertas circunstancias contradictorias que se desprendían de un poder por él autorizado.

Ante tal situación, el 12 de febrero de 2007, la Directora Interina de ODIN nos remitió un documento intitulado "Estado de la Notaría del Lcdo. Luis A. Nieves Nieves", mediante el cual señaló, entre otras cosas, que el 5 de mayo de 2006, le había notificado al licenciado Nieves Nieves las deficiencias en su obra notarial. Puntualizó que, a pesar de habérsele concedido el término de quince (15) días para contestar, éste nunca lo hizo. Indicó, además, que la ODIN se había comunicado con el notario de epígrafe para inquirir sobre la falta de contestación al informe, a lo que éste indicó no haber recibido el mismo. Esto, a pesar de que su firma aparecía en el acuse de recibo del correo. Indicó, no obstante, que el 31 de agosto de 2006, se le volvió a dar copia del informe.

En cuanto a las deficiencias señaladas, informó que el notario concernido había violado la Ley y el Reglamento Notarial de Puerto Rico al haber autorizado, en el año 2000, dos (2) testamentos abiertos sin incluir expresión a los efectos de que los testigos conocían a los testadores. Asimismo, señaló que el notario en cuestión incidió al no dar fe de conocimiento, o identificación de los testigos en cuatro (4) testamentos por él autorizados entre el período del 2001 al 2003, ambos inclusive. Indicó, además, que el licenciado Nieves Nieves incidió al autorizar una escritura de compraventa donde no figuraban las firmas de algunos de los comparecientes al final de la escritura.

El 23 de marzo de 2007, emitimos una Resolución concediéndole al licenciando Nieves Nieves un término de veinte (20) días para expresarse sobre el informe de la ODIN.

El 14 de abril de 2007, el notario en cuestión presentó una "Moción en Cumplimiento de Orden", en la que señaló, en lo pertinente, que no había podido subsanar las deficiencias de los dos (2) testamentos por él autorizados en al año 2000, esto es, falta de expresión de que los testigos conocían a los testadores, toda vez que éstos habían fallecido. Señaló que le entregó original del certificado de defunción a la Inspectora de Protocolos.

En relación a las deficiencias relativas a los dos (2) testamentos por él autorizados en el año 2001, esto es, falta de fe de conocimiento o identificación de los testigos, expresó que no había podido subsanar una de las escrituras porque la testadora había fallecido. Señaló, por otra parte, que no pudo subsanar la deficiencia del otro testamento por razón de que la testadora estaba incapacitada mentalmente al momento en que intentó corregir las faltas.

Con respecto a las deficiencias notariales para el año 2002, indicó, una vez más, que no había podido corregir las mismas debido a que la testadora había fallecido. Otra vez, señaló que había entregado el original del certificado de defunción a la Inspectora de Protocolos.

Finalmente, en relación a las deficiencias notariales correspondientes al año 2003, esto es, falta de fe de conocimiento, o identificación de todos los comparecientes en un testamento, indicó que no había podido corregir los mismos por razón de que la testadora había fallecido.

Con relación a las deficiencias notariales en la escritura de compraventa por él autorizada en ese mismo año, esto es, falta de fe de conocimiento o identificación de todos los comparecientes, falta de firmas de algunos comparecientes, intimó que sus gestiones para realizar una escritura de ratificación habían sido infructuosas toda vez que veinte y uno (21) de los otorgantes en dicha escritura viven fuera de Puerto Rico. Indicó, además, que se había comunicado con dos (2) de ellos para que le consiguieran información sobre el lugar de residencia de los demás, pero que no había recibido la información solicitada.

Por otra parte, puntualizó que las faltas señaladas no habían causado perjuicio a las partes envueltas, así como que estaba en posición de hacer todos los esfuerzos por corregir las mismas. Precisó, además, que había tomado conocimiento de los errores cometidos, indicando que no volverían a ocurrir. Intimó, además, que lo contenido en el informe de ODIN había sido discutido y aceptado por la Inspectora de Protocolos.

II

De entrada debemos reiterar que los notarios están obligados a observar rigurosamente la Ley Notarial de Puerto Rico y su Reglamento, así como los Cánones del Código de Ética Profesional.[1]

Esto en virtud de que el notario es el conocedor del derecho que ejerce una función pública al dar fe y autenticidad, conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen.[2]

Hemos dicho que al autorizar un documento el notario presuntamente da fe y asegura que ese documento cumple con todas las **formalidades de ley**, **formal y sustantivamente**, **que el documento es legal y verdadero**, **y que se trata de una transacción válida y legítima**.[3]

Conviene atender, por separado, las deficiencias en la obra notarial del abogado de epígrafe, contenidas en el informe preparado por la Directora Interina de la ODIN. Veamos.

---

[1] Ley Núm. 75 de 2 de julio de 1987, según enmendada, conocida como la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2001 *et* seq.; Reglamento Notarial de Puerto Rico, según enmendado, 4 L.P.R.A. Ap. XXIV; Código de Ética Profesional, 4 L.P.R.A. Ap. IX; Véase, además, *In re Molina Fragosa*, 2006 T.S.P.R. 8, 2006 J.T.S. 17, 166 D.P.R.___ (2006).

[2] 4 L.P.R.A. sec. 2002; *In re González Maldonado*, 152 D.P.R. 871 (2000).

[3] *Íd*; *In re Rivera Alvelo y Ortiz Velásquez*, 132 D.P.R. 840 (1993); *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986).

### A. Falta de Expresión de que los testigos conocen al testador.

En *In re* López Toro, 146 D.P.R. 756 (1998), interpretando el Artículo 634 del Código Civil de Puerto Rico, expresamos que el testamento abierto deberá ser otorgado ante notario y **tres testigos idóneos** que vean y entiendan al testador.[4] En dicho caso, citando al profesor González Tejera, indicamos que **los testigos y el notario deben conocer al testador** para que nadie se haga pasar por éste y otorgue el testamento. Expresamos, además, que los testigos instrumentales son importantes para comprobar que el testador es efectivamente quien dice ser.[5]

En aquel caso, atendiendo **la obligación que tiene el notario <u>de consignar por escrito que los testigos conocen al testador</u>**, expresamos que el notario tiene <u>que hacer constar en todo testamento que autorice que los testigos instrumentales</u> **conocen**, ven y entienden al testador. Expresamos que si el notario no hace constar que los testigos instrumentales **conocen**, ven y entienden al testador, incurrirá en violaciones a su deber notarial y a la fe pública depositada en él, por lo que estará sujeto a sanciones por este Tribunal.

---

[4] 31 L.P.R.A. sec. 2181.

[5] En aquel caso, citando a Puig Brutau, expresamos que los testigos <u>tienen el deber de identificar al testador</u>.

En virtud de la discusión que antecede, resulta forzoso concluir que el notario de epígrafe violó la fe pública en él depositada al autorizar dos (2) escrituras, en el año 2000, en las cuales no dio fe de que los testigos conocían a los testadores.

Su contención, a los efectos de que no se pueden subsanar estas deficiencias debido a que los testadores ya fallecieron, es inmeritoria. Como conocedor del derecho, debía saber que, según resolviéramos en In re López Toro, *supra*, resuelto escasamente dos (2) años antes de autorizarse las escrituras en cuestión, que no dar fe de que los testigos conocen al testador puede dar lugar a que se inicien pleitos impugnando la validez del testamento.

**B. *Falta de fe de conocimiento, o identificación de los testigos.***

El Artículo 15(e) de la Ley Notarial de Puerto Rico, referente a las formalidades, conocimiento y advertencias que debe contener todo instrumento público, preceptúa, en lo que nos atañe, que la escritura pública, en adición al negocio jurídico que motiva su otorgamiento y sus antecedentes y a los hechos presenciados y consignados por el notario en la parte expositiva y dispositiva, debe contener **la fe expresa del notario de su conocimiento personal de los otorgantes o, en su defecto, de haberse**

**asegurado de su identidad por los medios establecidos** por este capítulo.[6]

La Regla 29 del Reglamento Notarial de Puerto Rico, *supra*, dispone que el notario debe asegurarse de conocer personalmente a los comparecientes de un instrumento y **de dar fe expresamente de dicho conocimiento en el instrumento que autoriza.** Indica, además, que de **no conocer a los comparecientes, el notario así lo hará constar**, procediendo a utilizar los medios supletorios de identificación.[7]

Hemos sido enfáticos al disponer que cuando se otorga un testamento abierto, por ser éste un instrumento público, el notario debe cumplir no sólo con las solemnidades contenidas en el Código Civil, sino, además, con los requisitos de forma que le imponen la Ley Notarial y su Reglamento.[8]

La autorización de un testamento sin seguirse, ni observarse rigurosamente las exigencias del Código Civil y la Ley Notarial pone en entredicho la validez del mismo y

---

[6] 4 L.P.R.A. sec 2033(e). Se refiere al Artículo 17 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035, que dispone los mecanismos para identificar a los testigos que el notario no conoce personalmente.

[7] 4 L.P.R.A. Ap. XXIV, R. 29.

[8] *In re* Irlanda Pérez, 2004 T.S.P.R. 117, 2004 J.T.S. 110, 162 D.P.R.___ (2004); *In re* Nieves Ortiz, 144 D.P.R. 918 (1998); *In re* Padilla Santiago, 158 D.P.R. 787 (2003).

por tal razón se considera una infracción seria por parte del notario.[9]

En vista de lo anterior, concluimos que el notario de epígrafe infringió la Ley y el Reglamento Notarial al autorizar cuatro (4) escrituras, entre los años 2001-2003, en las que omitió **consignar por escrito** que conocía personalmente a los testigos o, en su defecto, de que se había asegurado de su identidad mediante los mecanismos supletorios provistos por ley.

Una vez más, su contención de que las referidas escrituras no se pueden subsanar, por motivo del fallecimiento de los testadores, es inmeritoria.

## C.  *Falta de iniciales y/o firma de los otorgantes*

El Artículo 16 de la Ley Notarial dispone, en lo que aquí concierne, **que los otorgantes y los testigos firmarán la escritura** y estamparán las letras iniciales de su nombre y apellido o apellidos al margen de cada una de los folios del instrumento.[10]

Por su parte, por ser la firma un requisito esencial, el Artículo 34 de la Ley Notarial dispone la **nulidad** del

---

[9] *In re* Irlanda Pérez, *supra*; *In re* Méndez Rivera, 141 D.P.R. 753 (1996); *In re* Medina Adorno, 113 D.P.R. 177 (1982).

[10] 4 L.P.R.A. sec. 2034.

instrumento público **en que no aparezcan las firmas de las partes y testigos cuando deban hacerlo.**[11]

Asimismo, la Regla 34 del Reglamento Notarial dispone que **todos los que comparezcan en un instrumento público firmarán al final del mismo.**[12]

Hemos expresado que la firma es un requisito fundamental en una escritura pública ya que demuestra la aprobación por parte del otorgante del texto escrito que antecede. La omisión de la firma de uno o más de los otorgantes y/o testigos es una falta grave que causa un gran perjuicio a los otorgantes. Aunque la falta de la firma puede deberse a la inadvertencia de los comparecientes, **es el notario quien tiene la responsabilidad de que se observen todas las solemnidades requeridas y de que el documento cumpla con todos los requisitos exigidos por ley. No hacerlo acarrea serias sanciones disciplinarias.**[13]

Aplicando la normativa que antecede a las actuaciones del notario de epígrafe, resulta forzoso concluir que éste violó la Ley Notarial y su Reglamento al autorizar una escritura de compraventa, en el año 2003, en la que

---

[11] 4 L.P.R.A. sec. 2052.

[12] 4 L.P.R.A., Ap. XXIV, R. 34.

[13] In re González Maldonado, *supra.*

faltaban las firmas de varios comparecientes al final de la escritura.

Su planteamiento, a los efectos de que por razón de que veintiún (21) de los comparecientes en dicha escritura viven fuera de Puerto Rico no se ha podido corregir su falta, carece de mérito. Una vez más, el notario en cuestión debió haberse cerciorado, <u>desde que autorizó la referida compraventa, que las firmas de todas las partes aparecían al final del documento</u>. Máxime, cuando, como conocedor del derecho, debió advertir que la falta de la firma es una de las causales de nulidad *ab initio* de una escritura pública.

Finalmente, el Código de Ética Profesional, *supra*, concretamente, el Canon 35 preceptúa, en lo que nos concierne, que los abogados deben ser siempre sinceros y honrados con los tribunales, así como con sus compañeros miembros de las profesión. Por tal razón, dicho Canon enuncia que no es sincero ni honrado utilizar medios que sean inconsistentes con la verdad, ni se debe inducir a error utilizando artificios o una falsa relación de los hechos o el derecho.[14]

Hemos pautado que no es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad, ni se debe inducir al juzgador a error utilizando artificios **o una**

---

[14]  4 L.P.R.A. Ap. IX, R. 35.

**falsa relación de los hechos o del derecho.**[15]   Las obligaciones consagradas en el Canon 35 de Ética Profesional constituyen normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión.[16]

Por tal motivo, el abogado no sólo debe observarlas durante un pleito, sino en otras facetas en la cual se desenvuelva profesionalmente.

El compromiso de un abogado con la verdad debe ser siempre incondicional, toda vez que la verdad es atributo inseparable de ser abogado.  En consecuencia, se infringe el Canon 35, *supra*, **con el simple hecho objetivo de faltar a la verdad independientemente de los motivos para la falsedad.**[17]

Surge claramente de la relación fáctica presente que el licenciado Nieves Nieves no fue sincero ni honrado al indicar que no había recibido el informe de la ODIN, en el que se le indicaban las deficiencias en su obra notarial, <u>**a pesar de que firmó el acuse de recibo del correo recibiendo dicho informe**</u>.

---

[15] *In re*: Fernández de Ruiz, 2006 T.S.P.R. 73, 2006 J.T.S. 82, 167 D.P.R.____ (2006), citando a *In re*: Silvaglioni Collazo, 154 D.P.R. 533 (2001) e *In re*: Aguila López, 152 D.P.R. 52 (2000).

[16] *In re*: Ortiz Martínez, 2004 T.S.P.R. 66, 2004 J.T.S. 69, 161 D.P.R.____ (2004).

[17] *In re*: Fernández de Ruiz, *supra*.

La conducta desplegada por el notario de marras demuestra una clara inobservancia de la Ley Notarial y su Reglamento. Los errores cometidos por dicho notario en la autorización de varias escrituras públicas demuestran el desconocimiento de los postulados **más básicos** de la notaría.

Por los fundamentos antes expuestos, suspendemos indefinidamente al licenciado Nieves Nieves del ejercicio de la notaría en nuestra jurisdicción.

Se dictará Sentencia de Conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

TS-10199

Luis A. Nieves Nieves

SENTENCIA

San Juan, Puerto Rico, a 3 de julio de 2007.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, suspendemos al licenciado Luis A. Nieves Nieves inmediata e indefinidamente del ejercicio de la notaría. Se le impone el deber de notificar a todos sus clientes de su suspensión como notario, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar a los foros judiciales y administrativos. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de la notificación de esta Opinión Per Curiam y Sentencia, del cumplimiento de estos deberes.

Se ordena al Alguacil General de este Tribunal a incautarse de la obra y sello notarial del licenciado Nieves Nieves, debiendo entregar la misma a la Oficina de la Directora de Inspección de Notaría.

Notifíquese personalmente al querellado con copia de la Opinión Per Curiam que antecede y de esta Sentencia.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo